**STATE of Minnesota, Respondent,**

v.

**Thomas James KULSETH, Appellant.**

**No. C3-82-207.**

Supreme Court of Minnesota.

May 13, 1983.

C. Paul Jones, Public Defender, James M. Christenson, D. James Nielson, and Mary Serkus, Sp. Asst. Public Defenders, Thompson, Nielsen, Klaverkamp & James, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Norman B. Coleman, Jr., and Thomas F. Catania, Jr., Sp. Asst. Attys. Gen., W.M. Gustafson, County Atty., St. Peter, for respondent.

AMDAHL, Chief Justice.

Defendant was charged by a Nicollet County grand jury with first-degree (premeditated) murder, Minn.Stat. § 609.185 (1982), in the stabbing death of another man. The trial court denied a defense motion to suppress certain statements defendant made to the police shortly after the stabbing but granted a defense motion for change of venue to Redwood County. A jury in Redwood County found defendant guilty of the lesser included offense of first-degree (heat of passion) manslaughter, Minn.Stat. § 609.20(1) (1982). The presumptive sentence for that offense (a severity level VIII offense) by a person with defendant's criminal history score (three) is 76 (71–81) months in prison. The trial court sentenced defendant to 81 months in prison, which is the maximum permitted without the sentence constituting a durational departure. On this appeal from judgment of conviction, defendant contends that the trial court prejudicially erred in denying his motion to suppress the statement he made to the police in response to custodial interrogation. We affirm.

The stabbing that resulted in the death of the victim occurred in the victim's house early on August 17, 1981. The victim, as he had done on prior occasions, had invited defendant to accompany him home after the bar they were at closed. There were no witnesses to what happened.

When he called police, defendant said that he had just stabbed a man who had made homosexual advances toward him. Defendant's first words to the first officer arriving on the scene were, "I can't believe I just murdered the man." After determining that the victim was dead, this officer gave defendant a *Miranda* warning, obtained a waiver, and questioned him. Defendant elaborated on the claim that he made in his telephone report of the stabbing, namely, that he had stabbed the victim after the victim made homosexual advances toward him. Later, at the station, police gave another *Miranda* warning. Defendant at first invoked his right to silence but ultimately gave another statement similar to the one he had given at the scene.

1. Defendant's first contention on appeal is that he was so intoxicated as to be incompetent to be able to make a valid, intelligent, knowing and understanding

waiver of his right to silence. This argument relates to the statement made in response to custodial interrogation by police both at the scene and at the station.[1]

■ The issue of waiver of *Miranda* rights by an intoxicated suspect is an issue we have considered in a number of cases. *See, e.g., State v. Sickels,* 275 N.W.2d 809 (Minn.1979); *State v. Schenk,* 311 Minn. 549, 249 N.W.2d 461 (1977); *State v. Rainey,* 303 Minn. 550, 226 N.W.2d 919 (1975); *Jankord v. State,* 290 Minn. 168, 186 N.W.2d 530 (1971), *cert. denied,* 404 U.S. 942, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971); *State v. Kinn,* 288 Minn. 31, 178 N.W.2d 888 (1970). The general rule is that the state will be deemed to have met its burden of proof on the issue of waiver if it simply proves that a *Miranda* warning was given. *State v. Linder,* 268 N.W.2d 734, 735 (Minn.1978); *State v. Willadson,* 268 N.W.2d 546, 547 (Minn. 1978). However, if the defendant produces credible evidence that the waiver was not valid, then the state must come forward with other evidence and the trial court must make a subjective factual inquiry to determine, on the basis of all the circumstances, whether the waiver was voluntary, knowing, understanding and intelligent. *State v. Linder,* 268 N.W.2d 734, 735 (Minn. 1978). Defendant's intoxication is one among many factors to be considered. On appeal we will not reverse specific findings of the trial court unless those findings are clearly erroneous, but we will make an independent determination, on the basis of the facts as found by the trial court, of whether the state met its burden of proof.

■ In this case the defendant did not stress the intoxication issue at the omnibus hearing. In any event, contrary to defendant's assertion, the record on appeal does not compel the conclusion that defendant was so intoxicated as to be unable to make a valid waiver of his *Miranda* rights.

2. Defendant's other contention is that the police did not "scrupulously honor" his express invocation of his right to silence. This issue relates only to the statement that defendant gave at the police station.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court, after requiring that custodial interrogation of a suspect be preceded by the giving of an advisory warning of his right to remain silent and his right to counsel, summarized the procedures to be followed after the warnings, stating that if the suspect wants to remain silent "the interrogation must cease" and that if the suspect invokes his right to counsel "the interrogation must cease until an attorney is present." 384 U.S. at 474, 86 S.Ct. at 1627.

*Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), addressed the issue of whether and, if so, under what circumstances a police-initiated resumption of questioning was permissible after a suspect in custody had exercised his *right to silence.* The approach which the Court adopted was to determine retrospectively whether the exercise of the suspect's " 'right to cut off questioning' was 'scrupulously honored' " by the police. 423 U.S. at 104, 96 S.Ct. at 326 (*quoting Miranda v. Arizona,* 384 U.S. 436, 474, 479, 86 S.Ct. 1602, 1627, 1630, 16 L.Ed.2d 694 (1966)). In the case before it, the Court held that the police had "scrupulously honored" Mosley's exercise of his "right to cut off questioning" because the police "immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." 423 U.S. at 106, 96 S.Ct. at 327. Stated differently, it was not a case "where the police failed to honor a decision of a person in custody to cut off questioning, either by

1. The statements defendant made to the dispatcher and the statement defendant made to the first police officer on the scene were volunteered statements which clearly were admissible even if defendant was so intoxicated as to be unable to validly waive his *Miranda* rights. *State v. Lloyd,* 310 N.W.2d 463, 464 (Minn. 1981), and *State v. Schenk,* 311 Minn. 549, 550, 249 N.W.2d 461, 462 (1977).

refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind." 423 U.S. at 105–06, 96 S.Ct. at 327.

In *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981), the Court specifically addressed the issue not raised in the *Mosley* case and held that once a suspect has asserted his *right to counsel* the police may not resume questioning the suspect on their own initiative until counsel has been made available to the suspect.

 The issue of whether the trial court erred in admitting the statement given at the police station is a close one under *Mosley* but one which we need not decide. Stated differently, we have concluded that if there was error in admitting the statement—something that we do not decide—the error was nonprejudicial. Even if the trial court had suppressed the second statement, the jury still would have had the benefit of the testimony concerning defendant's first statement, which was similar to the second statement. Therefore, the evidence concerning the second statement was cumulative. Further, our examination of the record convinces us that, if anything, defendant benefited from having his extrajudicial statements admitted in evidence and that defendant's chances with the jury would have been diminished rather than enhanced if the statements had not been admitted.

Affirmed.