STATE of Minnesota, Respondent,

v.

Hoang Muc DANH, Petitioner, Appellant.

No. C1–93–86.

Supreme Court of Minnesota.

May 20, 1994.

**540**

John M. Stuart, State Public Defender, Susan Andrews, Asst. State Public Defender, Lawrence Hammerling, Deputy State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Raymond Schmitz, Olmsted County Atty., Gary A. Gittus, Asst. County Atty., Rochester, for respondent.

## OPINION

KEITH, Chief Justice.

This case raises the issue of whether the trial court abused its discretion in refusing to allow appellant Hoang Muc Danh to withdraw his guilty plea prior to sentencing, where his plea was part of a "package deal" or contingent plea agreement involving more lenient sentences for three co-defendants, including appellant's younger brother. We hold that, at the time of the guilty plea, the state must reveal to the trial court the contingent nature of "package deal" pleas, so that the trial court can determine if the defendant's plea is voluntary. We conclude that, under the circumstances of this case, the defendant is entitled to a postconviction evidentiary hearing on the issue of the voluntariness of his plea.

On April 12, 1992, appellant Hoang Muc Danh,[1] then age 23, and several young men entered Toan Le's home to "get even" with Le because they believed Le had beaten up their friend. While Danh waived a gun and told other people in the house to stay away, his 19 year-old brother, Giau Danh, and two others beat Le with a metal pipe and cut him with a machete.

Danh and his three co-defendants were charged in Olmsted County District Court with three counts of assault and three counts of burglary. Appellant was also charged with two counts of assault and two counts of tampering with a witness, after he allegedly warned Le not to testify against him. Shortly before trial, the state wrote to counsel for all the co-defendants, offering a plea agreement which was contingent upon all four co-defendants pleading. It required Danh to plead guilty to three charges of assault and one charge of tampering with a witness. His co-defendants were required to plead guilty to one charge of burglary each. The state agreed to dismiss the remainder of the charges and recommend a sentence of 114 months for Danh. The presumptive sentence

---

1. Appellant is half-Vietnamese, half-Cambodian. He was born in Vietnam and escaped to Malaysia with his family by handmade boat when he was 9 years old. The Danh family immigrated to the U.S. in 1980 and moved to Rochester, where they eventually opened an Asian grocery. In 1988, when appellant was 18 years old, his father died after a long bout with lymphoma. As the eldest son, appellant was apparently expected to take care of the family after his father's death.

for Danh's co-defendants would have been 48 months in prison but the state agreed to recommend 20 years' probation for each co-defendant.

Danh initially told his attorney that he would plead guilty, but on Monday, July 20, 1992, Danh informed his attorney that he had changed his mind. Danh's brother then asked to speak with him alone. After this conversation, Danh pled guilty.

At the guilty plea hearing, the trial court conducted a thorough Rule 15.01 inquiry. *See* Minn.R.Crim.P. 15.01 (1994). Danh stated that he had had a full opportunity to discuss the plea with his attorney and that he understood English well enough to understand the plea petition. The trial court questioned Danh regarding coercion. Danh stated that no promises other than those contained in the guilty plea petition[2] or stated in court had been made to him, and he affirmed that he had not been coerced into entering the plea. Based on Danh's responses to these inquiries, the trial court accepted Danh's plea of guilty. It is unclear to what extent the trial court was aware of the contingent nature of the plea at the time it was accepted.[3] Neither party explicitly mentioned the contingent nature of the plea at any point in the guilty plea hearing.

On August 20, 1992, appellant moved the trial court to allow him to withdraw his guilty plea on the ground that it was involuntarily given. The trial court denied Danh's motion on August 28, 1992. In its findings and order, dismissing Danh's motion to withdraw, the trial court noted that Danh's co-defendants were offered a "less punitive" agreement. It went on to state:

Certainly it would have been better to make a record of the fact that a favorable offer made to defendant's younger brother was contingent upon this defendant accepting the offer made to him. In that way the defendant could have been examined specifically about that issue at the time of the plea. I should have directed a number of questions to Defendant on that issue in order to explore his attitude at the time of the plea.

The trial court further noted:

In this case the motion to withdraw the plea was timely. Defendant also makes a compelling argument that as the eldest male in this immigrant family, he was under pressure to obtain a favorable outcome for his younger brother. It was only after he spoke privately to his brother that he entered his plea.

Nonetheless, the trial court found that the plea was voluntarily made and that the government would be prejudiced by a withdrawal of the plea. The trial court noted that Danh's brother would still receive the benefit of the plea bargain and that the state had a number of witnesses under subpoena and "one can infer a certain level of prejudice from the discharge of those subpoenas."

On October 21, 1992, the trial court revoked Danh's probation and executed a 36–month sentence for Danh's earlier assault, perjury and theft convictions, which sentence was to run consecutively to the sentence for Danh's most recent convictions. The following day the trial court sentenced Danh to 44, 65 and 68 months on the three assault convictions, which sentences were to run concurrently to one another. The court of appeals affirmed the trial court's denial of Danh's motion to withdraw a guilty plea, but amended Danh's 68–month sentence to 60 months.

---

**2.** Danh signed a "Rule 15 Petition." This petition included the details of the plea agreement, but did not include the fact that the co-defendants' pleas were contingent upon one another. Paragraph 21 of the petition stated:

That except for the agreement between my attorney and the prosecuting attorney:
   a. No one—including my attorney, any policeman, prosecutor, judge, or any other person—has made any promises to me, to any member of my family, to any of my friends or other persons, in order to obtain a plea of guilty from me.

   b. No one—including my attorney, any policeman, prosecutor, judge, or any other person—has threatened me or any member of my family or my friends or other persons, in order to obtain a plea of guilty from me.

**3.** The trial court stated in its findings and order dismissing appellant's motion to withdraw, "While I was aware that some sort of a package was being presented to all of the defendants, I was not a party to the negotiations and did not become aware of the specific details until they were presented in court."

The court of appeals did not amend Danh's 65–month sentence. *State v. Danh,* 500 N.W.2d 506, 511 (Minn.App.1993).

## I.

■ This court has never addressed the issue of a contingent plea agreement in which a defendant agrees to plead guilty in exchange for leniency for a third party. "Package deal" plea bargains are more common in jurisdictions that routinely subject co-defendants to joint trials than in Minnesota where joint trials of co-defendants are relatively rare. *See* Minn.R.Crim.P. 17.03 (1994). "Package deal" agreements are generally dangerous because of the risk of coercion; this is particularly so in cases involving related third parties, where there is a risk that a defendant, who would otherwise exercise his or her right to a jury trial, will plead guilty out of a sense of family loyalty.

In *Bordenkircher v. Hayes,* 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 668–69 n. 8, 54 L.Ed.2d 604 (1978), the U.S. Supreme Court stated that these types of agreements "might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider." Other states and federal circuit courts hold that "package deal" agreements are not *per se* invalid. *E.g., In re Ibarra,* 34 Cal.3d 277, 193 Cal. Rptr. 538, 666 P.2d 980, 986 (Cal.1983); *United States v. Marquez,* 909 F.2d 738, 741 (2nd Cir.1990); *See also* Bruce A. Green, *"Package" Plea Bargaining and the Prosecutor's Duty of Good Faith,* 25 Crim.L.Bull. 507, 516–521 (1989). However, several courts hold that this type of plea is *per se* involuntary if the prosecutor did not have probable cause to charge the third party. *See, e.g., In re Ibarra,* 193 Cal.Rptr. at 545, 666 P.2d at 987; *United States v. Nuckols,* 606 F.2d 566, 569 (5th Cir.1979).

The Model Code of Pre–Arraignment Procedure, as adopted by the Council of the American Law Institute, contains no provision forbidding the offer of lenient treatment to a third party as an inducement to plead guilty. However, the Advisory Committee to the Code recommended forbidding such inducements. As stated in the Commentary:

> The Reporter believes such inducements present a special risk that an innocent defendant will plead guilty and that a guilty defendant will receive treatment that does not meet his correctional needs and that he does not deserve in terms of his own character and dangerousness. Furthermore, allowing such offers may create a risk that a prosecutor who would otherwise be willing to offer greater leniency to the defendant avoids that issue by making the offer with respect to another person.

American Law Institute, *Model Code of Pre–Arraignment Procedure,* Commentary to § 350.3 at 615–16 (1975). Although there are no Minnesota cases which are on point, we have cautioned police officers against making a promise to free a relative in order to obtain a confession. *State v. Anderson,* 298 N.W.2d 63, 65 (Minn.1980).

■ Many courts which have addressed this issue note that the trial court must exercise special care to ascertain the voluntariness of such pleas. *E.g., United States v. Tursi,* 576 F.2d 396, 398 (1st Cir.1978). In practice, however, a thorough, but standard, Fed.R.Crim.P. Rule 11 inquiry will usually be sufficiently probing of voluntariness. *See, Politte v. United States,* 852 F.2d 924, 931 (7th Cir.1988); *United States v. Usher,* 703 F.2d 956, 958 (6th Cir.1983).

■ We are not prepared at this time to adopt a rule that "package deal" plea agreements are *per se* invalid. We believe, however, that such agreements are fraught with danger, and that the standard Minn. R.Crim.P. 15.01 inquiry cannot adequately discover coercion in these cases. We therefore hold that the state must fully inform the trial court of the details of these agreements at the time a defendant enters a "package deal" plea, and the trial court must then conduct further inquiries to determine whether the plea is voluntarily made.[4] In

---

4. We agree with the First Circuit Court of Appeals that "a later hearing cannot replace a full inquiry into voluntariness at the time the plea is entered." *United States v. Daniels,* 821 F.2d 76, 80 (1st Cir.1987). We also note that the Supreme Court has stated, "There is no adequate

future cases, a defendant must be allowed to withdraw his or her guilty plea if the state fails to fully inform the trial court of the nature of the plea, or if the trial court fails to adequately inquire into the voluntariness of the plea at the time of the guilty plea. This holding is in accordance with those cases which hold that trial courts must take extra steps to determine the voluntariness of these types of pleas. *E.g., In re Ibarra,* 193 Cal. Rptr. at 544, 666 P.2d at 986.

We are aware that our holding presents two further problems for trial courts: (1) to what degree may a defendant's decision to plead be influenced by an offer of leniency to a third party before the effect of that offer is coercive, and (2) what inquiries must the trial court make to determine voluntariness? Cases from other jurisdictions offer some guidance.

In *In re Ibarra,* 193 Cal.Rptr. at 544, 666 P.2d at 986, the California Supreme Court required that trial courts inquire at guilty plea hearings into the "totality of the circumstances" to determine whether a plea was unduly coerced or voluntarily given. The court went on to suggest several factors which might be explored in assessing the voluntariness of the plea, including: whether the prosecutor had a "reasonable and good faith" case against the third party; the strength of the factual basis for the plea; the nature and degree of coerciveness, for example, whether a third party has threatened the defendant; whether the leniency to a third party was an "insignificant factor" in the defendant's choice to plead guilty; the age of the defendant; whether defendant or the prosecutor had initiated plea negotiations; and whether charges had already been

pressed against a third party. *Id.* 193 Cal. Rptr. at 544–45, at 986–87.

The Pennsylvania Supreme Court took an approach similar to *Ibarra's* "significant factor" standard for "involuntariness" in *Commonwealth v. Dupree,* 442 Pa. 219, 275 A.2d 326 (1971). In that case, the court suggested that a "package deal" plea would be involuntary if the defendant *"primarily* entered his guilty plea" because of a threat that if he did not do so, his wife would be prosecuted. *Id.* 275 A.2d at 328 (emphasis in original).

## II.

■ The difficult question in this case is determining what, if any, relief should be accorded this defendant. Minn.R.Crim.P. 15.05 sets forth two bases for guilty plea withdrawal, which we summarized in *State v. Kaiser,* 469 N.W.2d 316 (Minn.1991), as follows:

Under subdivision 1, a defendant, upon timely motion, has a *right* to withdraw his guilty plea at any time, *before or after sentence* if the defendant can establish at the hearing on the motion to withdraw or at the postconviction hearing that withdrawal is necessary to correct a manifest injustice. However, under subdivision 2 a defendant, *in the trial court's discretion,* may be allowed to withdraw his guilty plea only if the defendant has not been sentenced and only if it is "fair and just" to do so.

*Id.* at 319 (emphasis in original, citation omitted). Defendant contends that since he moved to withdraw the plea before sentencing, he is entitled to withdraw the plea under the "fair and just" standard of subdivision 2. Summarizing and clarifying our decision in

substitute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him." *McCarthy v. United States,* 394 U.S. 459, 470, 89 S.Ct. 1166, 1173, 22 L.Ed.2d 418 (1969) (emphasis in original). Because voluntariness is equal in importance to knowingness, it should also be apparent from the record at the time of the plea. *See Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969) ("It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary").

Finally, this court, in *State v. Casarez,* 295 Minn. 534, 536, 203 N.W.2d 406, 408 (1973), similarly held that a guilty plea must appear *on the record* to have been voluntarily and intelligently made. In that case, we noted that the transcripts from the appellant's guilty plea and sentencing hearings were so incomplete that we could not determine whether the appellant had "properly waived all of his rights." We went on to note, "Nor is there anything in the record showing that the trial judge discussed the consequences of the plea so that defendant would have a full understanding of its consequences."

*Kim v. State,* 434 N.W.2d 263 (Minn.1989), we said in *Kaiser:*

> *Kim* clearly states that the defendant has the burden of proving that there is a "fair and just" reason for wanting to withdraw his plea and that the trial court "is to give due consideration not just to the reasons advanced by the defendant but to 'any prejudice the granting of the motion would cause the prosecution by reason of actions taken in reliance upon the defendant's plea.'" *Kim* rejected the approach of the pre-*Kim* decisions of the court of appeals, which had been saying that the trial courts ought to be liberal and lenient in allowing defendants to withdraw guilty pleas before sentencing. And *Kim* said that the "ultimate decision" of whether to allow withdrawal under the "fair and just" standard is "left to the sound discretion of the trial court, and it will be reversed only in the rare case in which the appellate court can fairly conclude that the trial court abused its discretion."

469 N.W.2d at 319–20 (citations omitted). We do not believe that the record on this appeal compels the conclusion that the district court abused its discretion in refusing to let defendant withdraw his guilty plea under the "fair and just" standard, as articulated in *Kaiser* and *Kim.* This is particularly so given the prejudice that the granting of the motion would have caused to the state.

We note, however, that "involuntariness of a guilty plea * * * constitute[s] such a manifest injustice as to entitle a defendant to withdraw his plea." *Hirt v. State,* 298 Minn. 553, 558, 214 N.W.2d 778, 782 (1974). Therefore, the trial court should have allowed appellant to withdraw his guilty plea if it found that the plea was involuntarily made. In this case, the trial court found that the plea was voluntarily made. This is a question of fact which will not be disturbed unless clearly erroneous. *State v. Kulseth,* 333 N.W.2d 635, 637 (Minn.1983). Findings of fact are not clearly erroneous if there is reasonable evidence to support them. *Adler v. State,* 284 Minn. 31, 169 N.W.2d 233 (1969). "The voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).

The record indicates that the trial court conducted a thorough standard Rule 15.01 inquiry. Appellant was represented by his own counsel and had adequate time to discuss the plea with his attorney. Appellant stated several times, under oath, that no promises or threats had been made to him and that he understood he was not being coerced into entering the plea. The trial court's findings and decision on this issue appear to have been carefully considered and were thoughtfully articulated. Were this an ordinary type of plea bargain, we would hold that the trial court's finding in this matter was amply supported by the evidence. Because of the unusual circumstances of this case, in particular because the details of the plea agreement were not fully disclosed to the trial court, we are concerned that the defendant has not been given a full opportunity to litigate the issue of whether his plea was rendered involuntary by the promise of leniency to his brother. We believe that, in this case, defendant and the state should be given an opportunity to present evidence on this issue at a postconviction hearing. If the trial court again concludes that the pleas were voluntary, appellant will not be entitled to withdraw his plea. We note also, as we did in *Kaiser,* that withdrawal might not be in appellant's best interests because if he were to withdraw his plea, he would face trial on the reinstated original charges.

### III.

In the court of appeals, the state correctly conceded that appellant's 68– and 65–month terms for assault should be reduced to 60 months, the mandatory minimum for a second degree armed assault conviction. The court of appeals reduced only the 68–month sentence. *Danh,* 500 N.W.2d at 511. The state concedes that defendant's 65–month sentence should also be reduced to 60 months. Even if defendant is not allowed to withdraw his pleas on remand, he is entitled to have the 65–month sentence reduced pursuant to the sentencing guidelines. *See* Minn.Stat. § 609.11, subd. 5 (Supp.1993).

## IV.

 Appellant, in his pro se supplemental brief, also raises the issue of whether the trial court erred in failing to give him credit against his 36-month sentence for a 1989 assault conviction for time served in a Probation Offender's Rehabilitation Training Program (PORT). The Minnesota Sentencing Guidelines state that "[c]redit should not be extended for time spent in residential treatment facilities as a condition of a stay of imposition or stay of execution." Minnesota Sentencing Guidelines at III.C.02. The trial court therefore did not err in failing to give credit for time served in the PORT program.

Remanded to district court for further proceedings.

TOMLJANOVICH, Justice (dissenting).

I disagree with the majorities' conclusion to remand this case for yet another hearing on the "voluntariness" of the plea. What will the trial judge learn that he does not already know? He has conducted a hearing on the defendant's motion to withdraw his plea and found the plea was voluntarily made. The majority points out that the finding is a "question of fact which will not be disturbed unless clearly erroneous. *State v. Kulseth,* 333 N.W.2d 635, 637 (Minn.1983)."

The majority goes to considerable pains to point out that the trial judge did everything right:

> The record indicates that the trial court conducted a thorough standard Rule 15.01 inquiry. Appellant was represented by his own counsel and had adequate time to discuss the plea with his attorney. Appellant stated several times, under oath, that no promises or threats had been made to him and that he understood he was not being coerced into entering the plea. The trial court's findings and decision on this issue appear to have been carefully considered and were thoughtfully articulated.

It appears the majority is concerned that joint plea agreements are unusual. I do not know whether joint plea agreements are all that uncommon, but even if they are, it does not seem to go to voluntariness in this case.

I do not believe anything will be accomplished by a second hearing, therefore, I respectfully dissent from that portion of the opinion ordering a remand.

COYNE, Justice (dissenting).

I join in Justice Tomljanovich's dissent.