*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1989**

Jesse Lee Paskey, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed July 18, 2016
Reversed and remanded
Stauber, Judge**

Clay County District Court
File No. 14-CR-12-4517

Cathryn Middlebrook, Chief Appellate Public Defender, Erik I. Withall, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brian J. Melton, Clay County Attorney, Moorhead, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Ross, Judge; and Stauber, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

On appeal from the denial of his postconviction petition, appellant argues that the district court erred by denying his request to withdraw his guilty plea because the plea was motivated by improper inducement by the prosecutor. Appellant also claims that he

is entitled to a default judgment because the state failed to timely deny the allegations contained in his petition for postconviction relief. Because the prosecutor failed to disclose to the district court at the plea hearing that appellant's plea agreement was a "package deal" that benefited a third party, appellant's plea was involuntary and, therefore, we reverse and remand to allow appellant to withdraw his guilty plea.

## FACTS

In December 2012, appellant Jesse Paskey was charged with kidnapping, second degree assault, and two counts of first-degree criminal sexual conduct. Appellant subsequently entered a guilty plea to one count of first-degree criminal sexual conduct and, as part of the plea agreement, the state dismissed the remaining three charges and recommended a guidelines bottom-of-the-box sentence of 306 months. At the plea hearing, appellant made no claim that he was innocent of the charge to which he was pleading guilty and denied that he had been threatened or promised anything other than the plea agreement. The district court then sentenced appellant in accordance with the terms of the plea agreement. Appellant did not file a direct appeal.

In April 2015, appellant filed a petition for postconviction relief requesting to withdraw his guilty plea. The petition alleged that appellant's plea was involuntary because it was motivated by improper inducement by the prosecutor. Specifically, appellant claimed that after he initially rejected the state's original plea offer of a 306-month sentence in exchange for his guilty plea to first-degree criminal sexual conduct, the prosecutor contacted his defense attorney Kenneth Kludt and entered into negotiations. The petition alleged that the prosecutor threatened to charge appellant's "mother with witness tampering based on

2

telephone calls and letters intercepted by the jail that housed [appellant] during the pendency of this case," but that appellant could "insulate his mother from criminal charges if he accepted the state's original offer." The petition further alleged that after Kludt advised appellant of his conversation with the prosecutor, appellant decided to accept the state's offer to plead guilty to first-degree criminal sexual conduct. Finally, the petition alleged that "[b]ut for [the prosecutor's] threat to charge [appellant's] mother with a crime, [appellant] would not have pleaded guilty."

The state failed to respond to appellant's petition, and the district court scheduled an evidentiary hearing. At the beginning of the evidentiary hearing, appellant moved for default judgment based on the state's failure to respond to the postconviction petition. The district court took the matter under advisement and then moved forward with the presentation of evidence.

Appellant testified consistently with the allegations in the postconviction petition. In addition, Pamela Harris, the prosecuting attorney, testified that after listening to "several hours" of telephone conversations appellant made from jail, she believed she had probable cause to charge appellant's mother with witness tampering. Harris also testified that she told Kludt that the investigation was pending, but that she would not pursue the investigation further if appellant pleaded guilty. According to Harris, Kludt requested that she "put in writing the fact that there was an investigation," which she memorialized in a letter dated February 25, 2013. The letter stated:

> This offer is valid until 9:00 a.m. on February 28, 2012.
> After that date the offer is withdrawn. The State will seek the
> maximum sentence and consecutive sentences if the matter goes

> to trial. [Appellant] as well as two individuals he has been communicating with are also the subject of a current investigation for tampering with a witness with regard to this case.

Harris further testified that she did not believe it was necessary to disclose to the district court her position not to charge appellant's mother if appellant accepted the plea offer.

The district court concluded that appellant was not entitled to default judgment. The district court also concluded that appellant failed to establish that his "guilty plea was invalid by improper inducements not disclosed to the Court at the plea hearing." Thus, the district court denied appellant's petition for postconviction relief. This appeal followed.

## D E C I S I O N

Appellant challenges the district court's denial of his postconviction petition. When reviewing a postconviction court's decision, we examine whether the postconviction court's findings are supported by sufficient evidence. *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012) (quotation omitted). We will reverse only if the postconviction court abused its discretion. *Id.* But the postconviction court's legal conclusions are reviewed de novo. *Greer v. State*, 836 N.W.2d 520, 522 (Minn. 2013).

"A defendant has no absolute right to withdraw a guilty plea after entering it." *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010). But a court must allow a defendant to withdraw his guilty plea if withdrawal is necessary to correct a manifest injustice. Minn. R. Crim. P. 15.05, subd. 1. A manifest injustice occurs when a guilty plea is not valid. *Raleigh*, 778 N.W.2d at 94. A guilty plea is valid when it is accurate, voluntary, and

4

intelligent. *Id.* Assessing the validity of a plea presents a question of law that this court reviews de novo. *Id.*

Appellant argues that his guilty plea was involuntary because it was induced by promises from the prosecutor that the state would not pursue witness tampering charges against his mother if he agreed to plead guilty. Appellant argues that the state's "failure to disclose the 'package deal' involving [his] mother invalidates [his] plea," and withdrawal of his guilty plea is "necessary to correct this manifest injustice."

To determine whether a plea is voluntary, we examine what the parties reasonably understood to be the terms of the plea agreement. *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000). The voluntariness requirement ensures that a defendant is not pleading guilty due to improper pressure or coercion. *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). Whether a plea is voluntary is determined by considering all relevant circumstances. *State v. Danh*, 516 N.W.2d 539, 544 (Minn. 1994).

However, additional scrutiny is required for a "package plea" in which the plea agreement includes leniency for a defendant's accomplices. *Butala v. State*, 664 N.W.2d 333, 339 (Minn. 2003); *Danh*, 516 N.W.2d at 542. In *Danh*, the defendant entered into a plea agreement that was linked to, and dependent on, plea agreements with three co-defendants. 516 N.W.2d at 540-41. The "package deal" provided, among other things, for a more lenient sentence for the defendant's younger brother. *Id.* at 540. The district court conducted a rule 15.01 inquiry before accepting the plea, but neither party mentioned the contingent nature of the plea. *Id.* at 541. The defendant later moved to withdraw his plea, but the district court denied the motion. *Id.* On appeal, the supreme

court held that such "package deal" agreements, although not per se invalid, are "generally dangerous because of the risk of coercion," particularly in cases involving related third parties, where "there is a risk that a defendant, who would otherwise exercise his or her right to a jury trial, will plead guilty out of a sense of family loyalty." *Id.* at 542. Accordingly, the court held that in order to ensure that package-deal plea agreements are voluntarily made, "the state must fully inform the [district] court of the details of the agreements," and the district court must conduct "further inquiries" beyond the standard rule 15.01 inquiry. *Id.* at 542-43.

Here, the district court concluded that "[n]o evidence suggests there was a promise of leniency or immunity" for appellant's mother. Thus, the district court held that because "[t]his was not a plea agreement negotiated for the benefit of [appellant's] mother," this was "not a true 'package deal' or 'contingent plea agreement' as those terms are used in *Danh*."

The state argues that the district court correctly determined that there was no package deal to disclose. We disagree. Plea agreements represent bargained-for understandings between the state and defendants, where each party foregoes rights and assumes risks in exchange for certainty regarding the outcome of criminal proceedings. *State v. Meredyk*, 754 N.W.2d 596, 603 (Minn. App. 2008). To determine "whether a plea agreement was violated, courts look to what the parties to the plea agreement reasonably understood to be the terms of the agreement." *Brown*, 606 N.W.2d at 674 (quotation omitted). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or

6

consideration, such promise must be fulfilled." *Id.* (quotations omitted). "[I]n close cases, plea agreements should be construed to favor defendants." *In re Ashman*, 608 N.W.2d 853, 858 (Minn. 2000). What the parties agreed to in a plea agreement is an issue of fact to be resolved by the district court; the plea agreement's interpretation or enforcement is an issue of law, which we review de novo. *Brown*, 606 N.W.2d at 674.

At the evidentiary hearing, Harris admitted that she told Kludt "that there was an investigation involving [appellant], his mother, and [A.M.], and that [that] investigation would not continue" if appellant accepted the plea offer. The record reflects that this conversation occurred after appellant had rejected the state's plea agreement. The only reasonable interpretation of Harris's conversation with Kludt is that the state was pursuing witness-tampering charges against appellant's mother but that if appellant accepted the state's plea offer, the state would drop the investigation against appellant's mother. Appellant's actions after Kludt relayed to appellant the details of his conversation with Harris demonstrate that appellant reasonably understood that the state was offering leniency toward his mother in exchange for his guilty plea. These undisputed actions include (1) appellant immediately contacted his mother who informed appellant that a detective had contacted her about the alleged witness tampering and (2) appellant accepted the plea offer "[l]ess than an hour" after receiving the information from Kludt. Moreover, the letter dated February 25, 2013, acknowledges the investigation of appellant's mother for witness tampering. Although neither the letter nor Harris's testimony explicitly involves leniency for appellant's mother *as a condition* of the plea agreement, implicit in the letter and in Harris's testimony is that the state promised not to

7

pursue witness-tampering charges against appellant's mother if appellant accepted the state's plea offer. At the very least, the issue of the terms of the plea agreement are ambiguous, which favors appellant. *See Ashman*, 608 N.W.2d at 858 (stating that ambiguities in plea agreements are construed in favor of defendants). Therefore, we conclude that the district court erred by rejecting appellant's claim that his plea agreement was a "package deal."

Because appellant's plea agreement was a "package deal," we must next determine the relief to be accorded appellant. In *Danh*, the supreme court stated:

> In future cases,[1] a defendant *must* be allowed to withdraw his or her guilty plea if the state fails to inform the [district] court of the nature of the plea, or if the [district] court fails to adequately inquire into the voluntariness *at the time of the plea*. This holding is in accordance with those cases which hold that [district] courts must take extra steps to determine the voluntariness of these types of pleas.

516 N.W.2d at 542-43 (footnote and emphasis added). And in a footnote, the supreme court emphasized that the inquiry must be made at the time of the guilty plea. *Id.* at 542 n.4. Specifically, the supreme court noted that "a later hearing cannot replace a full inquiry into the voluntariness at the time the plea was entered" because "[t]here is no adequate substitute for demonstrating in the record at the time the plea is entered the defendant's understanding of the nature of the charge against him." *Id.* (quotations and emphasis omitted).

---

[1] Because of the "unusual circumstances" present in *Danh*, the supreme court remanded for an evidentiary hearing. 516 N.W.2d at 544.

8

Here, there is no dispute that the district court was not apprised of the "package deal" at the time of the plea agreement. Moreover, the record reflects that none of the questions asked by the district court at the plea hearing involved the "package deal." Although the district court inquired of the voluntariness of appellant's plea at the plea hearing, none of the district court's questions involved the state's investigation of appellant's mother for witness tampering. Accordingly, under *Danh*, appellant must be allowed to withdraw his guilty plea. We therefore reverse and remand for proceedings not inconsistent with this opinion. And, because we conclude that the district court erred by denying appellant's request to withdraw his guilty plea, we need not address appellant's claim that the district court erred by concluding that appellant was not entitled to a default judgment.

**Reversed and remanded.**