*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0385**

Nathan Wesley McDonald, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed February 5, 2024
Affirmed
Bratvold, Judge**

Dakota County District Court
File No. 19HA-CR-19-1993

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kathryn M. Keena, Dakota County Attorney, Jessica A. Bierwerth, Assistant County Attorney, Hastings, Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Ross, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

In this appeal from an order denying postconviction relief from a second-degree murder conviction, appellant argues that the district court abused its discretion because

(1) his guilty plea was invalid, and the district court should have allowed him to withdraw it, and (2) he is entitled to an evidentiary hearing in support of his postconviction petition. Because appellant's guilty plea was valid as a matter of law, we conclude that the district court did not abuse its discretion in denying postconviction relief without an evidentiary hearing. Thus, we affirm.

**FACTS**

On August 1, 2019, respondent State of Minnesota charged appellant Nathan Wesley McDonald with second-degree intentional murder without premeditation under Minn. Stat. § 609.19, subd. 1(1) (2018). The state's complaint alleged that McDonald "shot [LT.R.] multiple times" in his West Saint Paul apartment in July 2019. The complaint also alleged that L.T.R. was in a relationship with McDonald's sister, with whom he was living until shortly before the murder. A few weeks after a "physical altercation" between L.T.R. and McDonald's sister, McDonald and others confronted L.T.R.; firearms were involved. A few days later, L.T.R. was found deceased.

In December 2019, a grand jury indicted McDonald for first-degree murder under Minn. Stat. §§ 609.185(a) and 609.05 (2018), which carries a mandatory life sentence, and second-degree intentional murder under Minn. Stat. §§ 609.19, subd. 1(1), and 609.05. Both counts alleged that McDonald aided and abetted his cousin, T.P., in murdering L.T.R.

At a hearing on August 19, 2020, McDonald appeared with his attorneys. McDonald's attorneys discussed reasons for pursuing plea negotiations, including the mandatory life sentence if the jury found McDonald guilty of first-degree murder. The prosecuting attorney described the state's offer to dismiss the first-degree murder charge

and recommend a prison sentence of 367 months in exchange for McDonald's guilty plea to second-degree murder as alleged in the indictment. The district court stated, "Any decision being made about accepting or rejecting [the state's] offer [is McDonald's] decision alone," and scheduled a plea hearing for two days later. Trial was set to begin September 9, 2020.

At the plea hearing on August 21, 2020, McDonald's attorney told the district court that the parties had reached a plea agreement with terms as described at the August 19 hearing. The prosecuting attorney agreed. The district court asked McDonald if he understood the plea agreement, and McDonald replied that he did.

The district court then asked if McDonald was ready to proceed, and McDonald replied, "I can't take the deal." The district court told McDonald that the court would recess so he could talk with his attorneys. The district court also asked whether a plea petition had been prepared. McDonald's attorney said that McDonald had signed a plea petition. The court recessed proceedings.

After proceedings resumed, the district court asked McDonald if he was ready to proceed. McDonald said, "Yes." After being sworn, McDonald testified that he had signed a plea petition after reviewing it line by line with his attorneys. McDonald's attorney then inquired about McDonald's understanding of the charges, his communications with his attorneys, and his trial rights. McDonald stated that he understood the charges against him, that all of his questions about the charges had been answered, that he had enough time to talk with his attorneys, and that he was satisfied with their representation and advice.

McDonald agreed that he understood his trial rights and that he was waiving those rights, including any potential defenses, by entering a guilty plea. He stated that he understood the maximum and minimum penalties for a conviction of intentional second-degree murder as well as the possible life prison sentence if he went to trial and was convicted of first-degree murder.

McDonald agreed that no one had made any threats against or promises to him or his family to get him to plead guilty and that he was not making any claim of innocence. McDonald stated again that he understood the rights he was giving up and wanted to proceed. McDonald's attorney asked whether he understood the state's promise to recommend a sentence of 367 months and dismiss the first-degree murder charge in exchange for McDonald's testimony at the plea hearing, his cooperation with law enforcement, and his potential testimony against his codefendant T.P., who is McDonald's cousin. McDonald replied that he understood and that this was the parties' agreement. McDonald's attorney then submitted the signed plea petition, and McDonald pleaded guilty to second-degree murder as alleged in the indictment.

McDonald testified to a factual basis for his plea. He agreed that he and his cousin, T.P., entered L.T.R.'s apartment in West Saint Paul on July 9, 2019, with a gun, that he intentionally shot the gun "at least five times," and that L.T.R. died as a result. McDonald testified that he "inten[ded] to shoot [his] gun" at L.T.R. The district court found that McDonald's guilty plea was a knowing, voluntary, and intelligent waiver of his trial rights and that McDonald's testimony provided an adequate factual basis for second-degree murder. The district court determined that McDonald was guilty of count two,

4

second-degree murder, and stated that count one, first-degree murder, would be dismissed at sentencing.

At the sentencing hearing on September 18, 2020, the district court asked if McDonald wanted to say anything before the sentence was imposed. McDonald responded by apologizing to his family for his actions and then stated:

> I'm innocent. I only took this deal . . . because of the lack of confidence my lawyers had in going to trial, and the pressure that was put on me when I tried to decline this deal, that I was scared and I feel like I've been railroaded. I feel bad for the loss of life, but it wasn't by the hands of me.

The district court took a recess. After proceedings resumed, the district court stated that there had been "extensive [plea] negotiations" in this case and that McDonald made "a knowing, voluntary, and intelligent decision" when he pleaded guilty. The district court also stated that McDonald could claim he is not responsible, "[b]ut in my eyes," McDonald is convicted. The district court sentenced McDonald to 367 months in prison.

Almost two years later, McDonald petitioned for postconviction relief, seeking to withdraw his guilty plea "because he asked to do so before sentencing, and it would have been fair and just to allow plea withdrawal." McDonald's petition also argued that "the plea was not intelligent and voluntary and therefore resulted in a manifest injustice" because "the court placed [McDonald] in a room with his parents for a lengthy contact visit, in which they persuaded him to plead guilty." McDonald asked for an evidentiary hearing and submitted two affidavits in support of his petition.

In McDonald's affidavit, he attested that he met with his family "for hours" during the recess at the August 21 plea hearing. His family hugged and "cried on [him] and told

5

[him] that [he] needed to take the plea deal for the good of the family." They told him that his sister was "depressed and suicidal" and that "the victim's family [was] harassing them and making death threats." McDonald averred that he felt "extremely coerced by [his] family, cornered, and mental[ly] abused," which led him to accept the plea agreement, even though he did not want to. McDonald's mother attested in her affidavit that McDonald's attorney asked her and her husband "to talk to [McDonald] and get him to accept the plea deal." She also averred that they "did what his lawyers told [them] to do, and convinced him to accept the plea deal."

The district court denied McDonald's petition and also determined that he was not entitled to an evidentiary hearing. The district court found that McDonald had "not alleged facts sufficient to show he was threatened or coerced into entering the plea of guilty." This appeal follows.

## DECISION

Appellate courts "review the denial of a petition for postconviction relief for an abuse of discretion." *Pearson v. State*, 891 N.W.2d 590, 596 (Minn. 2017). A postconviction court abuses it discretion when it "exercise[s] its discretion in an arbitrary or capricious manner, base[s] its ruling on an erroneous view of the law, or ma[kes] clearly erroneous factual findings." *Id.* (quotation omitted). When reviewing a district court's decision to deny postconviction relief, appellate courts review legal issues de novo and factual issues based on the sufficiency of the evidence. *Id.*

6

**I.** **The district court did not abuse its discretion by denying McDonald's postconviction petition to withdraw his guilty plea.**

McDonald's brief to this court argues that the district court abused its discretion because it did not allow him to withdraw his guilty plea, as he requested in his postconviction petition, even though the plea was invalid. The validity of a guilty plea is a question of law that appellate courts review de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). A valid guilty plea "must be accurate, voluntary, and intelligent (i.e., knowingly and understandingly made)." *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). McDonald does not contest the accuracy or intelligence of his plea on appeal, but he contends that his plea was not voluntary.[1]

"A defendant has no absolute right to withdraw a guilty plea after entering it." *Raleigh*, 778 N.W.2d at 93. The standard for plea withdrawal differs depending on whether the defendant asks to withdraw a plea before or after sentencing. "In its discretion the [district] court may allow the defendant to withdraw a plea at any time *before sentence* if it is fair and just to do so." Minn. R. Crim. P. 15.05, subd. 2 (emphasis added). "At *any time* the court must allow a defendant to withdraw a guilty plea upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest

---

[1] While McDonald's postconviction petition also argued that his plea was not intelligent, he does not raise this argument on appeal. When an appellant's brief does not address an argument raised in a petition for postconviction relief, that argument is forfeited. *State v. Butcher*, 563 N.W.2d 776, 780 (Minn. App. 1997), *rev. denied* (Minn. Aug. 5, 1997). Accordingly, we do not consider whether McDonald's guilty plea was intelligent, as the district court found during the plea hearing. We also note that McDonald's postconviction petition did not challenge the accuracy of his plea.

injustice." Minn. R. Crim. P. 15.05, subd. 1 (emphasis added). McDonald contends that he is entitled to relief under both standards, so we consider each standard separately.

### A. McDonald is not entitled to relief under the fair-and-just standard.

In his brief to this court, McDonald argues that the fair-and-just standard applies because "[a]t the sentencing hearing, and before he was sentenced, McDonald told the court he was innocent, that he did not feel well advised, and that he felt uniquely pressured by the contact visit with his parents during the course of the plea hearing." In its order denying postconviction relief, the district court determined that the fair-and-just standard did not apply to McDonald's request because "[a]lthough the [fair-and-just] standard would have applied to a request to withdraw his plea before sentencing . . . [McDonald] never made such a request."

It is true that McDonald asserted his innocence during the sentencing hearing. But neither he nor his attorneys moved to withdraw his plea before the district court imposed the sentence, even though the district court took a recess immediately after McDonald's statements about his innocence and being "railroaded." Accordingly, given that McDonald did not request to withdraw his plea before sentencing, the fair-and-just standard does not apply. *See* Minn. R. Crim. P. 15.05, subd. 2.

### B. McDonald is not entitled to relief under the manifest-injustice standard.

McDonald argues that his plea was involuntary and that he should be allowed to withdraw it under the manifest-injustice standard. "[M]anifest injustice exists where a guilty plea is invalid." *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). In denying McDonald's petition for postconviction relief, the district court determined that McDonald

8

did not allege "facts sufficient to show he was threatened or coerced into entering the plea of guilty" and thus did not demonstrate that his plea was not voluntary.

McDonald makes two arguments. First, he argues that "the parental involvement in this plea agreement was akin to a 'package deal' which courts treat with great care and skepticism" and which requires district courts to inquire to ensure the plea is voluntary. Second, he contends that the government or the district court coerced him into pleading guilty. We consider these arguments in turn.

### 1. McDonald's plea agreement was not a "package deal."

A "package deal" is a "contingent plea agreement involving more lenient sentences for [the pleading defendant's] co-defendants." *State v. Danh*, 516 N.W.2d 539, 540 (Minn. 1994). For example, in *Danh*, the defendant's plea agreement provided "more lenient sentences for three co-defendants, including [the defendant's] younger brother," if the defendant pleaded guilty. *Id.* The supreme court has stated that

> "[p]ackage deal" agreements are generally dangerous because of the risk of coercion; this is particularly so in cases involving related third parties, where there is a risk that a defendant, who would otherwise exercise his or her right to a jury trial, will plead guilty out of a sense of family loyalty.

*Id.* at 542. When parties proceed with a package deal, "the state must fully inform" the district court, which must "conduct further inquiries" to determine voluntariness. *Id.*

McDonald argues in his brief to this court that he pleaded guilty out of a sense of family loyalty. We are not persuaded to apply the caselaw on package deals because there are key differences between the plea agreement in this case and a package deal. In *Danh*, if the defendant pleaded guilty, his codefendants, including his younger brother, received

9

more lenient sentences. *Id.* at 540-41. The defendant in *Danh* initially rejected his plea agreement but decided to plead guilty after a private meeting with his younger brother. *Id.* at 541.

In contrast, McDonald's plea agreement did not directly benefit any members of his family. McDonald's codefendant was his cousin, and in the plea agreement, McDonald promised to testify truthfully in subsequent proceedings, including those involving any codefendants. But McDonald's plea agreement did not directly affect his codefendant's sentence. Accordingly, McDonald's guilty plea was not a package deal under *Danh*, and the district court did not have an obligation to make further inquiries about voluntariness.

### 2. McDonald was not otherwise coerced into pleading guilty.

McDonald's brief to this court also argues that his plea was involuntary because, during the meeting with his family, he "felt coerced into pleading guilty to protect his family." A plea is involuntary if it is the result of improper pressure or coercion. *Raleigh*, 778 N.W.2d at 96. Courts must consider all relevant circumstances to determine whether a guilty plea was voluntary. *Id*. "[T]he government may not produce a plea through actual or threatened physical harm, or by mental coercion overbearing the will of the defendant." *State v. Ecker*, 524 N.W.2d 712, 719 (Minn. 1994) (quotation omitted); *see also Brady v. United States*, 397 U.S. 742, 750 (1970) (same).

The parties agree that McDonald was not threatened with any actual or threatened physical harm. McDonald asserts that his parents "convinced him to plead guilty at the behest of his attorneys, by explaining to him that he needed to plead guilty to protect them

10

from harassment, death threats, and his sister's depression and suicidal ideation." McDonald contends that this was coercive and overcame his will.

Neither McDonald's nor his mother's affidavit asserts that the government coerced McDonald. To the contrary, McDonald's affidavit states that L.T.R.'s family threatened McDonald's family and that McDonald's family coerced him to plead guilty. The statements and actions of McDonald's family and L.T.R.'s family do not establish government coercion under *Brady* and *Ecker* because the families are not government actors.

McDonald's brief to this court alludes to "the judicial actors in the hearing room," including the district court, "plac[ing] McDonald alone in a room with his parents, who convinced him to plead guilty." But McDonald did not raise this argument in his petition for postconviction relief. "It is well settled that a party may not raise issues for the first time on appeal from denial of postconviction relief." *Azure v. State*, 700 N.W.2d 443, 447 (Minn. 2005). Accordingly, we decline to consider this argument for the first time on appeal.

Even so, we note that McDonald provides no record evidence that the state or the district court arranged the meeting between McDonald and his parents during the plea hearing. McDonald's mother's affidavit avers that McDonald's attorney asked McDonald's parents to talk to McDonald and "get him to accept the plea deal." Yet, McDonald makes no claim that his attorney coerced him into pleading guilty.

Also, the plea-hearing transcript reflects that, after the recess, McDonald's attorney asked him whether anyone had threatened McDonald or his family to "get" him to plead

guilty. McDonald indicated that no one had done this. He also agreed that no one had made promises to "get" him to plead guilty. Since McDonald does not allege facts showing coercion by the government, the district court correctly determined that McDonald was not entitled to postconviction relief.

## II. The district court did not abuse its discretion by denying an evidentiary hearing.

An appellate court reviews "the ultimate decision by the postconviction court to grant or deny an evidentiary hearing for an abuse of discretion." *Caldwell v. State*, 853 N.W.2d 766, 770 (Minn. 2014). A district court must hold a postconviction evidentiary hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2022). In making this decision, "a postconviction court considers the facts alleged in the petition as true and construes them in the light most favorable to the petitioner." *Andersen v. State*, 913 N.W.2d 417, 422-23 (Minn. 2018) (quotation omitted). "[I]f material facts are in dispute which have not been resolved in the proceedings resulting in conviction and which must be resolved in order to determine the issues raised on the merits, the court *must* schedule an evidentiary hearing." *State v. Nicks*, 831 N.W.2d 493, 506 (Minn. 2013) (quotation omitted).

McDonald argues that the district court abused its discretion by denying his request for an evidentiary hearing because, looking at the facts he alleged in the light most favorable to him and assuming that his family coerced him into pleading guilty, an evidentiary hearing is required to determine whether his plea was voluntary.

12

We disagree. As stated above, a plea is involuntary if the government produces the "plea through actual or threatened physical harm, or by mental coercion." *Ecker*, 524 N.W.2d at 719. Even if we accept as true each of the facts asserted in McDonald's petition and accompanying affidavits, McDonald did not assert that the government threatened him or mentally coerced him to produce a guilty plea. Therefore, the district court did not abuse its discretion by denying his request for an evidentiary hearing.

### III. McDonald is not entitled to any relief based on the arguments in his pro se supplemental brief.

In his pro se supplemental brief, McDonald argues his actual innocence and asserts that his guilty plea was invalid because it was inaccurate. We reject these arguments for two reasons.

First, McDonald relies on affidavits submitted for the first time with his pro se supplemental brief, including an affidavit by T.P. that recants earlier statements and states that McDonald was not present for L.T.R.'s murder. The record on appeal includes "documents filed in the trial court, the exhibits, and the transcript of the proceedings, if any." Minn. R. Civ. App. P. 110.01. The court of appeals "generally will not consider matters outside the record on appeal or evidence not produced and received in the district court." *MacDonald v. Brodkorb*, 939 N.W.2d 468, 474 (Minn. 2020). Additionally, "[i]t is not within the province of [appellate courts] to determine issues of fact on appeal." *Kucera v. Kucera*, 146 N.W.2d 181, 183 (Minn. 1966). Because the affidavits submitted along with McDonald's pro se supplemental brief were not filed with the district court, we do not consider them.

13

Second, neither of McDonald's pro se arguments was raised in district court in support of plea withdrawal. We generally will not consider matters for the first time on appeal after the denial of postconviction relief. *Azure*, 700 N.W.2d at 447. Because McDonald did not assert actual innocence or contend that his guilty plea was inaccurate in his petition for postconviction relief, we decline to consider either issue.

**Affirmed.**