**STATE of Minnesota, Appellant,**

v.

**Paul Irwin JOHNSON, Respondent.**

No. 48522.

Supreme Court of Minnesota.

Feb. 2, 1979.

Warren Spannaus, Atty. Gen., St. Paul, Bob G. Goldman, County Atty., Craig S. Nelson, Asst. County Atty., Albert Lea, for appellant.

Stephen R. Erickson, Albert Lea, for respondent.

Heard before ROGOSHESKE, TODD and YETKA, JJ., and considered and decided by the court en banc.

KELLY, Justice.

The state appeals from a pretrial suppression order of the Freeborn County District Court. Defendant cross-appeals from that portion of the same order which rules certain statements admissible at trial.[1] We affirm in part and reverse in part.

The facts involved in the present appeal are not in controversy.[2] On October 4, 1977

---

1. Pursuant to Rule 29.03, subd. 3, Rules of Criminal Procedure.

2. The only person testifying at the omnibus hearing was a Freeborn County Deputy Sheriff.

at 11:39 p. m., Deputy Anton Wayne of the Freeborn County Sheriff's Department was on routine patrol on a township road near the Albert Lea Airport. He passed a gravel pit adjacent to the road and noticed a vehicle with its interior light on in the gravel pit. Deputy Wayne parked his squad car behind the vehicle in the gravel pit, at right angles to it. The headlights of the police car partially illuminated the open trunk of the other vehicle. Prior to exiting his car, Deputy Wayne notified the police dispatcher of his location and told the dispatcher that he could not read the license plate number on the rear of the other vehicle.

Deputy Wayne left his patrol car and proceeded to the front of the vehicle where he found two men. He noticed that the vehicle was stuck in the gravel pit. He determined that the two men were defendant, Paul Irwin Johnson, the owner. and driver of the vehicle, and Doyle Almquist. The two men told Deputy Wayne that they became stuck while chasing a jackrabbit with the vehicle.

The two men asked Deputy Wayne to help them pull the car out of the sand. He refused, but offered to call a wrecker if the men desired. The two refused the offer and Deputy Wayne started back to his car.

Prior to his departure, Deputy Wayne walked to the rear of the Johnson vehicle to check for the license plate number. He did not find a rear license plate; but through the illumination of the patrol car's headlights Deputy Wayne observed three fresh green plants which he believed to be marijuana. Deputy Wayne then summoned defendant to the rear of the car and informed him that he had found marijuana. Defendant responded, "No, that's zinnias." Deputy Wayne countered, "No, it's marijuana." When defendant then asked if he just couldn't have a break, Deputy Wayne responded, "No, that's marijuana you got in your trunk."

At this point Deputy Wayne placed defendant under arrest and seized a brown paper bag from the trunk. He immediately opened the bag and observed a large plastic bag containing smaller plastic bags within.

The smaller bags contained a green vegetable substance, later found to be marijuana. Doyle Almquist was called to the rear of the vehicle; both men were searched and defendant was handcuffed.

Defendant asked to speak to Deputy Wayne, who placed him in the rear of the squad car. Almquist remained illuminated by the headlights of the police patrol car. After a *Miranda* card was read to defendant, he asked Deputy Wayne for a break because he feared loss of his new job. Deputy Wayne reiterated that defendant was under arrest.

After this conversation, Almquist was placed in the patrol car. Deputy Wayne then radioed for Deputy Sheriff Nelson and for a tow truck. Following Deputy Nelson's arrival, Almquist was placed in Nelson's squad car. Deputy Wayne took possession of the three plants and the brown bag. He then searched the interior of the vehicle and obtained the keys to the locked glove compartment from defendant. In the glove compartment he found two baggies containing a green leafy substance and a pill bottle containing two small marijuana roaches.

Doyle Almquist was transported to his residence; defendant was taken to the county jail and the car was towed away. At the jail, defendant was once again advised of his *Miranda* rights and declined further comment.

The trial court ruled that the seizure of the three fresh plants was valid as a plain view seizure; it ordered suppression of the brown bag and contents of the glove compartment on the ground that a warrant should have been obtained. The statements made before and after the *Miranda* warnings were ruled admissible.

The issues raised by this appeal are:

(1) Was the warrantless search of the automobile and the seizure of the brown bag and contents of the glove compartment illegal when the automobile was immobilized in a gravel pit?

(2) Were the statements by the defendant prior to receiving *Miranda* warnings

admissible when they were made following statements by a deputy sheriff who suspected that defendant had committed a crime?

(3) Were the statements made by defendant after receiving *Miranda* warnings inadmissible?

Defendant does not dispute that the seizure of the freshly picked plants from the trunk of his car was lawful under the "plain view doctrine." *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).[3] The trial court, however, rejected the state's arguments concerning seizure of the marijuana found in the trunk and the glove compartment of defendant's car without a search warrant, reasoning that there were no exceptions which would permit such a warrantless search of the remainder of the car. We disagree.

At the time Deputy Wayne observed the marijuana plants in defendant's trunk, he called defendant back to the rear of the vehicle to discuss the situation. After defendant made the statements which are the subject of the second part of this opinion, he was placed under arrest by Deputy Wayne, who simultaneously seized the brown paper bag containing marijuana.

■ In *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court held that a warrantless search of the person and the area within his immediate control is valid incident to a lawful arrest. The search is limited, however, to a search for weapons and destructible evidence. 395 U.S. at 762, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. The facts of the present case clearly justified the seizure of the bag as part of a search incident to defendant's arrest. In addition, there are other reasons for not suppressing this evidence.

■ The deputy's conduct in seizing the bag and the contents of the glove compartment can be justified under either of two well-established exceptions to the warrant

requirement: (1) The "instrumentality" theory; or (2) the so-called automobile exception. The instrumentality theory is appropriate because defendant was transporting contraband in his automobile. See *State v. Thompson*, 285 Minn. 529, 173 N.W.2d 459 (1970); *State v. Thiel*, 299 Minn. 179, 217 N.W.2d 499 (1974); 7 Minnesota Practice, Criminal Law and Procedure, § 144.

Equally appropriate is the automobile exception. The validity of warrantless automobile searches depends on the existence of probable cause and exigent circumstances.

■ As long ago as *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the United States Supreme Court recognized that automobile searches could constitutionally be treated differently from other searches. Warrantless searches of automobiles may be justified in circumstances where searches of homes or offices may not. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The original justification for allowing a warrantless search of an automobile on probable cause is that the inherent mobility of vehicles creates exigencies which make it impractical to obtain a warrant before the search is conducted.

■ Probable cause to search exists when there are facts and circumstances sufficient to warrant a reasonably prudent man to believe that the vehicle contains contraband. *Husty v. United States*, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931). In the case before us after Deputy Wayne observed the marijuana plants in the trunk of defendant's car, the facts were sufficient for him to reasonably believe that there might be additional marijuana located in other areas of defendant's car.

This holding finds support in numerous decisions. For example, in *Commonwealth v. Miller*, 366 Mass. 387, 318 N.E.2d 909 (1974), the operator of a van which had

---

**3.** Deputy Wayne was making a routine check of a disabled automobile. He was looking for a license plate and saw the plants in an already opened trunk. Defendant argued to the trial court that the seizure was not a plain view seizure, but he has abandoned that contention on appeal.

been stopped for a registration check alighted from the van, at which time the officer noticed a clear plastic packet containing a green substance which the officer believe to be marijuana protruding from the operator's pocket. Evidence obtained in the subsequent search of the van was ordered suppressed by the trial judge. The Massachusetts Supreme Judicial Court reversed, ruling that the observation of marijuana in the pocket of the van's driver furnished probable cause to believe that additional drugs might be found in the van, thereby justifying a complete search. See, also, *Wimberly v. Superior Court*, 16 Cal.3d 557, 128 Cal.Rptr. 641, 547 P.2d 417 (1976).

Probable cause in this case being established, the next question is whether the deputy's actions, being conducted without the benefit of a warrant, were for that reason unlawful.

■ In *Coolidge v. New Hampshire*, 403 U.S. 443, 460, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564, 579 (1971), the United States Supreme Court stated that the justification for allowing warrantless searches of automobiles is their inherent mobility which creates exigencies making it impracticable to obtain a warrant.[4]

Respondent contends that because the defendant's automobile was "stuck" and because the officer was in complete control of the situation, there were no exigent circumstances to justify dispensing with the warrant requirement. We cannot agree.

The facts show that defendant's automobile was being used at the time of the confrontation for an illegal purpose. In addition, the automobile was only temporarily immobilized—anyone who might come along could free it. The passenger had the potential to return and destroy the evidence while the deputy was obtaining a warrant. Posting a guard would have been impractical. *Cady v. Dombrowski*, 413 U.S. 433, 447, 93 S.Ct. 2523, 2531, 37 L.Ed.2d 706, 718 (1973). In addition the arrest and seizure occurred late at night in a gravel pit.

It would be unlikely that a magistrate would have been immediately available to issue a warrant. Under these circumstances, we think that the rationale in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), is controlling.

In *Chambers* the court ruled that a search warrant is unnecessary where there is probable cause to search an automobile stopped on a highway because the auto is movable, the occupants are alerted, and the auto's contents may never be found again if a warrant must be obtained. 399 U.S. 51, 90 S.Ct. 1981, 26 L.Ed.2d 428. The court went on to say that arguably, because of the preference for the judgment of a neutral magistrate on the probable cause issue, only the immobilization of the automobile should be permitted until a search warrant is obtained. The court concluded, however, that for constitutional purposes:

"* * * [W]e see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." 399 U.S. 52, 90 S.Ct. 1981, 27 L.Ed.2d 428.

The second issue raised by defendant concerns the admissibility of certain statements he made to Deputy Wayne prior to being given a *Miranda* warning.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that certain safeguards must be accorded to a person subjected to any "custodial interrogation" defined as:

"* * * [Q]uestioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. 444, 86 S.Ct. 1612, 16 L.Ed.2d 706.

---

**4.** An equally strong justification is the diminished expectation of privacy associated with automobiles. See, *South Dakota v. Opperman*,

428 U.S. 364, 96 S.Ct. 3092, 47 L.Ed.2d 1000 (1976).

In *Jankord v. State*, 290 Minn. 168, 186 N.W.2d 530 certiorari denied, 404 U.S. 942, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971), we held that police officers were not required to give *Miranda* warnings simultaneously with the act of handcuffing a suspect and that subsequent statements made by a suspect, absent police interrogation, were voluntary and admissible. See, generally, 7 Minnesota Practice, Criminal Law and Procedure, § 184, and Annotation, 31 A.L.R.3d 565 (1970). Because, in the instant case, the interrogation which is a prerequisite to the *Miranda* requirements was lacking, we cannot say that the trial court erred in admitting the statements. Because we find that the lower court did not err with respect to the pre-*Miranda* statements, the post-*Miranda* statements present no problem and were properly admitted.

The trial court is affirmed as to his rulings that the statements in question and the three fresh plants were admissible, and reversed as to the suppression of the brown bag of marijuana and contents of the glove compartment.

Affirmed in part and reversed in part.