**STATE of Minnesota, Appellant,**

v.

**Jeffrey Lyle ROBB, Respondent.**

No. C1–98–1872.

Court of Appeals of Minnesota.

March 30, 1999.

Michael A. Hatch, Attorney General, St. Paul, Robert M.A. Johnson, Anoka County Attorney, Marcy S. Crain, Assistant County Attorney, Anoka, for appellant.

John M. Stuart, State Public Defender, Leslie J. Rosenberg, Minneapolis, for respondent.

Considered and decided by DAVIES, Presiding Judge, PETERSON, Judge, and HALBROOKS, Judge.

## OPINION

PETERSON, Judge.

In this pretrial appeal, appellant State of Minnesota challenges an order suppressing evidence found in the passenger compartment of respondent Jeffery Lyle Robb's vehicle during a search incident to Robb's arrest. We affirm.

### FACTS

Anoka County sheriff's deputies Richard J. Kreyer and Patrick J. Ferraro were patrolling a boat landing area when they noticed a boat trailer with expired license tabs. The deputies ran a computer check on the license tabs and discovered that the tabs did not match the trailer. About the same time, a woman drove into the landing area in a Ford Bronco. The woman identified herself as Patricia Hammond and told the deputies that respondent Jeffrey Lyle Robb owned the trailer and the Bronco. Hammond also told the deputies that Robb was out on the lake in his boat.

The deputies ran a routine license check on the Bronco and confirmed that the Bronco was registered to Robb. They also learned that there was an outstanding misdemeanor body-only arrest warrant for Robb stemming from a minor traffic offense.

Hammond beckoned Robb toward shore, and the deputies asked him to pull his boat up to the landing so that they could speak with him. Robb cooperated with the deputies and identified himself as Jeffrey Robb. When asked if he had any identification to confirm his identity, Robb walked to his Bronco with Kreyer following, reached through an open front window to the dash area, and pulled out identification. The identification confirmed Robb's identity, and he was told that he was going to be arrested pursuant to the outstanding warrant.

When Robb asked whether his Bronco and trailer would be towed, the deputies told him that he could load the boat onto the trailer, attach them to the Bronco, and let Hammond drive the Bronco home. However, Kreyer told Robb that before the boat could be loaded, the deputies would have to search the Bronco and the boat. When Kreyer mentioned that the vehicles would have to be searched, Robb became visibly nervous and agitated, and he would not consent to the search.

Without obtaining Robb's consent, Kreyer told Ferraro to search the Bronco. Kreyer told Robb that his vehicle was going to be searched incident to his arrest, to ensure the deputies' safety. Ferraro found a loaded 12-gauge shotgun in the passenger compartment of the Bronco.

After the shotgun was found, Robb was formally arrested pursuant to the outstanding warrant. An investigation later revealed that Robb had been convicted of second-degree assault in 1992. Because second-degree assault is a "crime of violence," and ten years had not yet lapsed since Robb's sentence expired, the state charged Robb with felonious possession of a firearm by an ineligible person (convicted felon) in violation of Minn.Stat. §§ 624.713, subds. 1(b), 2; 609.101, subd. 4; 609.11, subd. 5(b) (1996).

Robb moved to suppress all evidence stemming from the search of his Bronco on grounds that the search was unlawful. The court initially denied the motion to suppress, concluding that the deputies' search of the Bronco was a lawful search incident to Robb's arrest. However, the court later informed both parties that it wished to reconsider the admissibility of the evidence. Upon reconsideration, the court determined that the search was unlawful because Robb was not an "occupant" of the Bronco. The court issued an order suppressing all items seized from the Bronco and any other evidence or statements that resulted from the search.

## ISSUE

Was the search of the passenger compartment of the Bronco a lawful search incident to Robb's arrest?

## ANALYSIS

The state may appeal pretrial orders in felony cases pursuant to Minn. R.Crim. P. 28.04, subd. 1(1) provided that in suppression of evidence cases, "the state must 'clearly and unequivocally' show both that the trial court's order will have a 'critical impact' on the state's ability to prosecute the defendant successfully and that the order constituted error."

*State v. Scott,* 584 N.W.2d 412, 416 (Minn. 1998) (quoting *State v. Zanter,* 535 N.W.2d 624, 630 (Minn.1995)).

### I.

To demonstrate critical impact, the state need not show that the exclusion of the evidence completely destroys its case; it need only show that it significantly reduces the likelihood of a successful prosecution. *State v. Joon Kyu Kim,* 398 N.W.2d 544, 547 (Minn.1987). Robb is charged with felonious possession of a firearm by an ineligible person under Minn.Stat. §§ 624.713, subds. 1(b), 2; 609.101, subd. 4; 609.11, subd. 5(b) (1996). Excluding the shotgun and any other evidence that resulted from the search of the Bronco would significantly reduce the likelihood of successfully prosecuting Robb. The state has demonstrated that the trial court's order will have a critical impact on the state's ability to successfully prosecute Robb.

### II.

[W]hen reviewing a pre-trial order suppressing evidence where the facts are not in dispute and the trial court's decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed.

*State v. Othoudt,* 482 N.W.2d 218, 221 (Minn. 1992).

The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures.

[T]he most basic constitutional rule in this area is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions."

*Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)).

In *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981), the Supreme Court established one of the exceptions to this rule. In *Belton,* the court held that

when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

*Id.*

The district court concluded:

For purposes of application of the occupant of a vehicle exception, [Robb] was not an "occupant" of the Bronco which was searched.

The state concedes that Robb was neither driving his Bronco nor a passenger in it just before his arrest but, nevertheless, the state argues that the district court erred when it concluded that the warrantless search of the Bronco did not fall within the *Belton* exception. The state contends that the district court's literal interpretation of the word "occupant" was too restrictive and

that the search was valid even though Robb was not driving or riding in the Bronco immediately before his arrest.

We disagree. In *Belton,* the Supreme Court explained that its holding was intended to establish a straightforward, workable definition of the area that may be searched under *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), when the area within the immediate control of an arrestee arguably includes the interior of an automobile and the arrestee is a recent occupant of the automobile. *Belton,* 453 U.S. at 460, 101 S.Ct. at 2864. A straightforward rule was necessary, the Supreme Court explained, because

> the protection of the Fourth and Fourteenth Amendments "can only be realized if the police are acting under a set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement."

*Id.* at 458, 101 S.Ct. at 2863 (quoting LaFave, "Case–By–Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma, 1974 S.Ct. Rev. 127, 142).

The court explained further:

> When a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority.

*Id.* at 459–60, 101 S.Ct. at 2864.

Because the Supreme Court's holding in *Belton* was intended to avoid case-by-case determinations whether an automobile may be searched when an occupant of the automobile is arrested, we are not persuaded by the state's argument that the search of Robb's Bronco was valid even though Robb was not driving or riding in the Bronco immediately before his arrest. Accepting the state's argument would require us to begin a new case-by-case process of determining whether a person who was not actually in an automobile before being arrested was, nevertheless, an occupant of the automobile for purposes of applying the rule in *Belton.* This process would undermine the goal of *Belton* to establish a bright-line rule for determining when an automobile may be searched.

When the deputies first encountered Robb's Bronco, Robb was not in the Bronco. He was in his boat out on the lake. During the entire course of events at the boat landing, Robb never got into the Bronco. The closest that Robb came to entering the Bronco was when he reached in through an open window and retrieved his identification from the dashboard.

The state contends that in three cases involving a search incident to an arrest, courts have permitted a warrantless search of the passenger compartment of an automobile even though the person arrested was not an occupant of the automobile before the arrest. We do not agree that any of these cases provides a basis for extending the rule in *Belton* to permit an automobile search incident to the arrest of a person who was not a recent occupant of the automobile that was searched.

In the first of these cases, *State v. Johnson,* 277 N.W.2d 346, 348 (Minn.1979), a deputy on routine patrol late at night investigated a vehicle with its interior light on stopped in a gravel pit. The deputy found two men near the front of the vehicle and noticed that the vehicle was stuck in the gravel pit. *Id.* The deputy determined that one of the men, the defendant Paul Johnson, was the owner and driver of the vehicle. *Id.* The men asked the deputy to help them pull the car out of the sand. *Id.* He refused, but offered to call a wrecker. *Id.* They declined the offer, and the deputy started back to his car. *Id.* As the deputy was leaving, he observed three plants that he believed to be marijuana in plain view in the car's open trunk. *Id.* The deputy summoned Johnson to the rear of the car and after a brief discussion, arrested him and seized a brown paper bag from the trunk. *Id.* He opened the bag and found that it contained a green vegetable substance later found to be marijuana. *Id.* After radioing for another deputy and for a tow truck, the deputy searched the interior of the car, including the locked glove compartment, and found more marijuana. *Id.*

Citing *Chimel,* the supreme court upheld the seizure of the bag in the trunk of John-

son's vehicle as part of a search incident to his arrest. *Johnson*, 277 N.W.2d at 349. The supreme court also concluded that:

> The deputy's conduct in seizing the bag and the contents of the glove compartment can be justified under either of two well-established exceptions to the warrant requirement: (1) The "instrumentality" theory; or (2) the so-called automobile exception. The instrumentality theory is appropriate because defendant was transporting contraband in his automobile.
>
> Equally appropriate is the automobile exception. The validity of warrantless automobile searches depends on the existence of probable cause and exigent circumstances.

*Id.* (citations omitted).

The court determined that there was probable cause to search the passenger compartment because when the deputy observed the marijuana plants in the trunk of Johnson's car, "the facts were sufficient for him to reasonably believe that there might be additional marijuana located in other areas of [the] car." *Id.*

*Johnson*, a pre-*Belton* decision, provides no basis for concluding that the passenger compartment of an automobile may be searched incident to the arrest of a person who was not an occupant of the automobile. The seizure incident to the arrest in *Johnson* was the seizure of a brown bag in the trunk of Johnson's car that was easily within Johnson's reach as he stood at the rear of the vehicle. The court permitted this seizure under *Chimel*; it did not create a new exception to the warrant requirement. Similarly, the court permitted the search of the passenger compartment because it was based on probable cause. Here, the district court did not determine that the passenger compartment of the Bronco was within Robb's reach at the time he was arrested, and the state does not contend that there was probable cause for the deputies to search Robb's Bronco.

In the second case cited by the state, *State v. Tolsdorf*, 574 N.W.2d 290, 291 (Iowa 1998), a deputy arrested the defendant Martin Tolsdorf after confirming that Tolsdorf was the subject of an outstanding arrest warrant. While sitting in the deputy's car after the arrest, Tolsdorf asked the deputy for permission to lock his truck, which was parked nearby, and the deputy agreed. *Id.* The deputy saw Tolsdorf enter the truck and move around some items on the floor. *Id.* The deputy asked if he could search the truck, and Tolsdorf refused. *Id.* The deputy then told Tolsdorf that he would search the truck anyway as a search incident to the arrest, and he searched the truck. *Id.* The deputy found marijuana in the truck, and Tolsdorf was prosecuted for possession of marijuana without tax stamps. *Id.* Tolsdorf moved to suppress the evidence seized during the warrantless search of his truck. *Id.*

In *Tolsdorf*, the Iowa Supreme Court concluded that the search was permitted under *Belton*. *Id.* at 292. In explaining its conclusion, the court stated:

> In the premises-search cases, courts have recognized that if for some good reason the defendant is allowed to move about the premises after his arrest, then these movements will open up new areas which come within his "immediate control" and thus are subject to search. *A somewhat similar situation may occasionally occur with respect to a vehicle. Thus, a defendant who was not occupying his vehicle but was arrested near it might then obtain permission from the police to secure the car and its contents. His movements in closer proximity to the car or into the vehicle, it would seem, will provide a basis for a search of part of the auto which otherwise could not be subjected to search under Chimel.* Courts must be alert, however, to the possibility that the police caused the defendant to move toward or into the vehicle so that they could justify what would otherwise be an unreasonable search of the car.

*Id.* (quoting 3 Wayne R. LaFave, *Search and Seizures: A Treatise on the Fourth Amendment* § 7.1(b), 442 (3d ed.1996)) (citation omitted).

The *Tolsdorf* court did not extend the rule in *Belton* to an arrest of a person who was not a recent occupant of the automobile that was searched. Tolsdorf was in his truck immediately before it was searched. *Id.* at 291. Unlike Tolsdorf, Robb did not enter his

car. When told that the deputies would have to search his car before Robb would be allowed to enter it, Robb did not consent to a search. Before Robb could do anything, the deputies searched the car. Because he did not enter the car, Robb cannot be treated as if he were an occupant.

In the third case cited by the state, *United States v. Sholola,* 124 F.3d 803, 806–07 (7th Cir.1997), a police officer stopped the defendant Harry Sholola outside a bank after Sholola obtained a cash advance using a suspicious driver's license for identification. When the officer asked Sholola if he had a car, Sholola said that he did and pointed to a nearby car. *Id.* at 807. The officer asked if Sholola had keys to the car and could prove it belonged to him. *Id.* Instead of answering, Sholola took some keys from his pocket, walked to the car, opened the front driver's side door, and stated, "See, it's my car." *Id.* When Sholola was about to enter the car, the officer directed him to move away from the door and then positioned himself between Sholola and the open car door. *Id.* After further investigation, the officer arrested Sholola and searched the interior of the car where he found incriminating evidence that led to the discovery of additional incriminating evidence. *Id.* at 808.

On appeal from a conviction for conspiracy to import heroin, Sholola asserted that the search of his car was not permitted under *Belton* because he was not an occupant of the car immediately before the search. *Id.* at 817. The reviewing court found that *Belton* applied and that the search was justified as a search incident to a lawful arrest because, although Sholola was not in the car when he was arrested, he was "positively linked" to the car before his arrest. *Id.* The court stated that the United States Supreme Court emphasized in *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), that the rule in *Belton* authorizes an automobile search whenever officers effect a custodial arrest. *Sholola,* 124 F.3d at 819.

We decline to follow *Sholola* because we do not agree that in *Michigan v. Long,* the Supreme Court extended the rule established in *Belton* to permit an automobile. search whenever officers effect a custodial arrest.

In *Long,* two deputies saw a car travelling erratically and at excessive speed. *Long,* 463 U.S. at 1035, 103 S.Ct. at 3473. When the car swerved off the road into a ditch, the deputies stopped to investigate. They were met by David Long, the only occupant of the car, and asked him to produce his driver's license. *Id.* Long did not respond. *Id.* They asked again, and he produced his license. *Id.* at 1036, 103 S.Ct. at 3473. Long again failed to respond when the deputies asked him to produce the vehicle registration. *Id.* When they asked again, he turned and began walking toward the open driver's side door of the car. *Id.,* 103 S.Ct. at 3474. The deputies followed and saw a large hunting knife on the floor on the driver's side of the car. *Id.* They stopped Long and conducted a protective patdown search that revealed no weapons. *Id.* One of the deputies then searched the car for other weapons and discovered a pouch of marijuana. *Id.* Long was arrested for possession of marijuana. *Id.*

After discussing *Belton* and other cases that permit protective searches under circumstances that pose a particular danger to police, the Supreme Court concluded that the principles applied in those cases

> compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." If a suspect is "dangerous," he is no less dangerous simply because he is not arrested.

*Id.* at 1049–50, 103 S.Ct. at 3481 (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 27, 88 S.Ct. 1868, 1880, 1883, 20 L.Ed.2d 889 (1968)).

This conclusion contained a footnote, which stated, in part,

We stress that our decision does not mean that the police may conduct automobile searches *whenever* they conduct an investigative stop, although the "bright line" that we drew in *Belton* clearly authorizes such a search whenever officers effect a custodial arrest.

*Id.* at 1050, 103 S.Ct. at 3481 n. 14.

The *Sholola* court cited this footnote as authority for its statement that the Supreme Court emphasized in *Long* that an automobile search is authorized whenever officers effect a custodial arrest. *Sholola*, 124 F.3d at 817. We do not agree that the language in this footnote can be interpreted to permit an automobile search when officers effect a custodial arrest of a person who was not an occupant of the searched automobile immediately before the arrest.

In *Belton*, there was no question that immediately before the automobile search occurred, the person arrested had been an occupant of the automobile that was searched. The Supreme Court explicitly stated that the warrantless search exception authorized in *Belton* applies "when a policeman has made a lawful custodial arrest of the occupant of an automobile." *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864.

In *Long*, there was also no question that immediately before the automobile search occurred, the person who was arrested had been an occupant of the automobile that was searched. The Supreme Court explicitly stated that it granted certiorari in *Long*

> to consider the important question of the authority of a police officer to protect himself by conducting a *Terry*-type search of the passenger compartment of a motor vehicle during the lawful investigatory stop of the occupant of the vehicle.

*Long*, 463 U.S. at 1037, 103 S.Ct. at 3474.

Because there was no question in either *Belton* or *Long* that immediately before the automobile search occurred, the person arrested had been an occupant of the automobile that was searched, there is no basis for concluding that the footnote in *Long* extended the rule established in *Belton* to permit an automobile search when officers effect a custodial arrest of a person who was not an occupant of the searched vehicle immediately before the search.

Furthermore, the search in *Long* was not a search incident to his arrest; the fruits of the search provided the basis for his arrest. *See State v. White*, 489 N.W.2d 792, 794–95 (Minn.1992) (not critical whether arrest takes place before or after search so long as officer had probable cause to arrest before search and fruits of search not necessary to support arrest). Marijuana was discovered during the search, and Long was arrested for possession of marijuana. *Long*, 463 U.S. at 1036, 103 S.Ct. at 3474. Consequently, the Supreme Court could not have intended to suggest in the footnote in *Long* that it was extending the rule in *Belton* to permit an automobile search incident to the arrest of a person who was not an occupant of the automobile because the factual circumstances in *Long* would not fall within such a rule. Long was an occupant of the automobile, and the search was not a search incident to his arrest. *Id.* at 1035, 103 S.Ct. at 3473–74.

We conclude that the footnote relied on by the *Sholola* court to support its statement that *Belton* authorizes an automobile search whenever police effect a custodial arrest does not support this statement. The footnote does no more than emphasize that an investigative stop of an automobile does not, by itself, provide a basis for an automobile search. This is in contrast to the arrest of an occupant of an automobile, which, under *Belton*, is sufficient by itself to permit a search of the automobile.

### DECISION

Because Robb was not in his Bronco before he was arrested, he was not an occupant of the Bronco for purposes of the *Belton* rule. The district court did not err when it suppressed the evidence seized during the warrantless search of the Bronco and any other evidence that resulted from the search.

**Affirmed.**