STATE OF MINNESOTA

IN SUPREME COURT

A24-0818

Court of Appeals                                                             Hennesy, J.

State of Minnesota,

          Respondent,

vs.                                                                          Filed: May 6, 2026
                                                                  Office of Appellate Courts
Alfredo Torrez,

          Appellant.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Greg Widseth, Polk County Attorney, Scott A. Buhler, First Assistant Polk County Attorney, Crookston, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Joseph McInnis, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

To ensure that a contingent plea is voluntary, a district court must inquire into the nature of the contingency and conduct a heightened inquiry into any risk of coercion; the proper remedy for failing to do so is plea withdrawal.

Reversed and remanded.

1

O P I N I O N

HENNESY, Justice.

This case requires us to decide the validity of appellant Alfredo Torrez's guilty pleas made as part of a contingent plea agreement. Torrez, his wife, and their adult son were all charged with various controlled substance offenses after law enforcement discovered suspected bags of methamphetamine and drug paraphernalia in their residence. The State charged Torrez with four felony counts. Torrez subsequently entered into a contingent plea agreement, agreeing to plead guilty to one count of first-degree sale of a controlled substance and one count of conspiracy to commit a first-degree controlled substance crime in exchange for the State dismissing the remaining two counts and promising leniency for Torrez's wife. At the plea hearing, the district court did not ask Torrez any questions concerning potential coercion but accepted Torrez's pleas. Torrez later moved to withdraw the pleas, but the district court denied Torrez's motion.

On appeal, Torrez argued, among other things, that his contingent pleas were involuntary because the district court failed to inquire into potential coercion that might have induced the pleas. The court of appeals affirmed, concluding that Torrez's contingent pleas were voluntary. Because we conclude that the district court erred as a matter of law by failing to conduct a heightened inquiry targeting the risk of coercion inherent in contingent pleas, we reverse the court of appeals and remand to the district court to allow Torrez to withdraw his guilty pleas.[1]

---

[1] In addition to challenging the voluntariness of his guilty pleas, Torrez also seeks to withdraw his guilty pleas on the grounds that his pleas were not intelligent because his

2

**FACTS**

In October 2022, law enforcement discovered suspected methamphetamine and drug paraphernalia during a search of Torrez's residence. Subsequently, the State charged Torrez, his wife, and their adult son with various drug-related offenses. Torrez was charged with four felony counts: (1) first-degree sale of a controlled substance, Minn. Stat. § 152.021, subd. 1(1); (2) first-degree possession of a controlled substance, Minn. Stat. § 152.021, subd. 2(a)(1); (3) failure to affix a tax stamp, Minn. Stat. § 297D.09, subd. 1a (2022); and (4) conspiracy to commit a first-degree controlled substance crime, Minn. Stat. §§ 152.021, subd. 1(1) (first-degree sale of controlled substance), 152.096, subd. 1 (conspiracy).

On the morning of trial, Torrez's attorney informed the district court that the parties had reached a plea agreement and the State filed an "amended offer letter" signed by the State, Torrez, and Torrez's attorney. The agreement specified that Torrez would plead guilty to count one, first-degree sale of a controlled substance, and count four, conspiracy to commit a first-degree controlled substance crime. In exchange, the State agreed to dismiss the remaining two counts and promised leniency for Torrez's wife. Specifically, the State agreed (1) not to seek execution of Torrez's wife's probationary

_cognitive deficits prevented him from understanding the consequences of the pleas and because the district court denied his request for an interpreter and failed to order a competency evaluation on its own initiative. Further, Torrez contends that he was prejudiced by ineffective assistance of counsel when his attorney undermined his motion to withdraw his guilty pleas and failed to request a competency evaluation. Because we reverse and remand for the pleas to be withdrawn on the voluntariness ground, we need not reach the merits of Torrez's remaining arguments concerning the intelligence of his guilty pleas or his attorney's effectiveness._

sentences, (2) to make an offer to Torrez's wife to resolve her pending case without any prison or additional jail time, and (3) to try to accommodate a contact visit between Torrez and his wife before Torrez was transported to prison.

At the plea hearing, the district court conducted an inquiry into the validity of Torrez's pleas pursuant to Minnesota Rule of Criminal Procedure 15. *See* Minn. R. Crim. P. 15.01, subd. 1 (requiring district courts, prior to accepting a guilty plea, to ensure, among other things, that the defendant had sufficient time to discuss the case with counsel, is fully informed as to the facts of the case, and was not promised any terms outside those set forth in the plea agreement). The court inquired into Torrez's background. Torrez acknowledged that he reads and writes English, has a GED, and understood what was happening at the plea hearing. The district court then confirmed that Torrez had sufficient time to review the complaint, necessary discovery materials, the "amended offer letter," and the sentencing agreement with his attorney. Torrez further confirmed that his attorney had answered all his questions, and he was satisfied with his attorney's advice. Next, the district court explained the presumption of innocence, the right to a jury trial, the right to confront witnesses, the right to remain silent, and the State's burden of proof at trial. Torrez stated that he understood his rights and was waiving each right.[2]

---

[2]    Towards the end of the district court's inquiry, the court asked Torrez if he had questions about the trial rights that he was waiving. Torrez responded, "I had a few, but I forgot them." The district court also inquired whether Torrez was under the influence of alcohol, which he denied. The district court then asked, "Have you ever been diagnosed with any physical ailments or infirmities that would cause the Judge to be concerned about your capacity to go forward today? Anything physical about yourself?" Torrez

The State then questioned Torrez about the plea agreement, including the promise of leniency to his wife.

> PROSECUTOR: And maybe most important, I've agreed not to seek execution of your wife's probationary sentences, correct?
>
> TORREZ: Yes.
>
> PROSECUTOR: And I've also agreed to make an offer to her to resolve her pending case, without any additional time in jail or prison, do you understand that?
>
> TORREZ: Yes.
>
> PROSECUTOR: Now, I can't force her to plead guilty, do you understand that?
>
> TORREZ: Yes.
>
> PROSECUTOR: I'll make an offer for her. I'll submit a copy to your attorney. I'll probably try to get that done in the next couple of weeks here. I understand your wife's got health issues, and so I'm going to try and accommodate her with making her plead to something because I've got to tell you, Mr. Torrez. One of my problems is that if she keeps using methamphetamine, it's only going to get worse for her, correct?
>
> TORREZ: Yes.
>
> PROSECUTOR: And I'm hoping by at least her being on supervised probation, somebody's looking over her shoulder and keeps her from continuing to use methamphetamine, do you understand that?
>
> TORREZ: Yes.
>
> PROSECUTOR: But if she turns down my offer and she says you know what, I'm going to insist on my right to trial and she ends up in prison, that wouldn't be me breaching the plea agreement. Because my obligation is to

answered, "I'm losing my mind. I want to do something and by the time I get there I forget it. Or I'm talking and if somebody interrupts, it's just not there anymore." Nevertheless, when the district court asked if he felt confident in his ability to understand the procedures at his plea hearing and to go forward with the plea agreement, Torrez answered that he did.

extend an offer to keep her out of jail or prison. I can't force her to do that, do you understand that?

TORREZ:     I understand.

PROSECUTOR:     And then finally, I'll try to accommodate a contact visit between you and Maria Torrez, your wife before you go to prison. The sheriff's office is usually pretty good about being able to get you out of the jail and put you guys in a secure room, so that you can have a contact visit before you go to prison, do you understand that?

TORREZ:     Yes, Sir.

At the end of its questioning, the State again emphasized the significance of the promised leniency for Torrez's wife: "And let's be honest, the big consideration here for you is getting some consideration for your wife, is that accurate?" Torrez answered in the affirmative. The district court observed the State question Torrez but did not make additional inquiries into the voluntariness of his pleas or require him to submit a written plea petition.[3]

---

[3]     We have never held that a district court abuses its discretion simply by failing to require a defendant to submit a written plea petition. *See, e.g.*, *Perkins v. State*, 559 N.W.2d 678, 686 (Minn. 1997) (stating that, in the plea-petition context, "[d]istrict court judges are free to adopt local rules of practice that are not in conflict with state rules promulgated by the Minnesota Supreme Court"). But we note that the Minnesota Rules of Criminal Procedure recommend using a signed plea petition:

It is suggested by the Advisory Committee that the defendant sign a Petition to Plead Guilty in the form appearing in the Appendices to these rules (which contain in even more detailed form the information showing the defendant's understanding of defense rights and the consequences of pleading), and that the defendant be asked upon the inquiry under Rule 15.01 to acknowledge signing the petition, that the defendant has read the questions set forth in the petition or that they have been read to the defendant, and that the defendant understands them, that the defendant gave the answers in the petition, and that they are true.

A few weeks after the plea hearing, Torrez filed a motion to withdraw his guilty pleas, stating that he "changed his mind," did not "believe [the] pleas [were in] his best interest," and that he wished to proceed to trial. The district court denied Torrez's plea withdrawal motion and sentenced him.

Torrez appealed, asking the court of appeals to allow him to withdraw his pleas on several grounds, including that the pleas were involuntary because the district court failed to inquire into the potential coercive nature of his contingent pleas. *State v. Torrez*, No. A24-0818, 2025 WL 1291305, at \*1, \*3 (Minn. App. May 5, 2025). The court of appeals disagreed, emphasizing that the district court had engaged in a "sufficient inquiry" to support its determination that Torrez's pleas were voluntary. *Id.* at \*3. As such, the court of appeals concluded that Torrez's pleas were voluntary and affirmed the district court's denial of Torrez's plea withdrawal motion. *Id.* at \*1, \*3. We granted Torrez's petition for review.

## ANALYSIS

Torrez argues that his guilty pleas were involuntary because the district court failed to conduct a heightened voluntariness inquiry as required for contingent pleas. The State contends that Torrez forfeited the issue by failing to make a specific and timely objection in district court regarding the voluntariness of his pleas and waived any

---

Minn. R. Crim. P. 15 cmt. We further note that the form appearing in the appendices to the rules for pleading guilty in a felony case includes a representation by the defendant "[t]hat except for the agreement between my attorney and the prosecuting attorney … [n]o one—including my attorney, any police officer, prosecutor, judge, or any other person—has made any promises to me, to any member of my family, to any of my friends, or to other persons, to obtain a plea of guilty from me."

7

argument that the district court plainly erred in accepting the guilty pleas by failing to argue plain error on appeal. The State also argues that Torrez's guilty pleas were voluntary because the parties fully disclosed the terms of the plea agreement, including the State's promise of leniency to Torrez's wife, at the plea hearing.

We first address the State's argument that Torrez failed to preserve the claimed error and conclude that Torrez may challenge the voluntariness of his pleas for the first time on appeal. Next, we turn to the merits of Torrez's challenge to the voluntariness of his pleas, beginning with the voluntariness inquiry required for a contingent plea and then addressing whether Torrez's pleas meet that standard. Because we determine that the district court failed to conduct the required inquiry to ensure the voluntariness of Torrez's pleas, we conclude by discussing the proper remedy for the error.

A.

Minnesota Rule of Criminal Procedure 15.05, subdivision 1, allows a defendant to withdraw a guilty plea at "any time" when it is "necessary to correct a manifest injustice." We have repeatedly held that such "manifest injustice" exists when a guilty plea is not constitutionally valid. *State v. Jones*, 7 N.W.3d 391, 395 (Minn. 2024) (quoting *Bonnell v. State*, 984 N.W.2d 224, 226–27 (Minn. 2022)). "To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *Bonnell*, 984 N.W.2d at 226–27 (citation omitted) (internal quotation marks omitted). "Assessing the validity of a plea presents a question of law that we review de novo." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010).

8

Because the only justification Torrez gave to support his motion to withdraw his pleas in district court was that he had "changed his mind" and did not "believe [the] pleas [were in] his best interest," the State argues that Torrez either forfeited or waived any additional argument challenging the validity of his pleas. While the State correctly observes that the failure to make a timely and specific objection generally results in forfeiting an issue, a defendant may challenge a guilty plea's validity on direct appeal without a prior objection. *See Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989) (noting that "[a] defendant is free to simply appeal directly from a judgment of conviction and contend that the record made at the time the plea was entered is inadequate in one or more of these respects").

Here, Torrez argues that his guilty pleas were constitutionally invalid because the district court failed to conduct a heightened inquiry at the plea hearing to ensure Torrez's pleas were voluntary. An involuntary plea constitutes a "manifest injustice" warranting plea withdrawal at "any time." Minn. R. Crim. P. 15.05, subd. 1; *see also Jones*, 7 N.W.3d at 395 (noting that Minn. R. Crim. P. 15.05 requires a court to allow plea withdrawal "to correct a manifest injustice"). Consequently, Torrez may challenge the voluntariness of his guilty pleas for the first time on appeal without being subject to plain error review.

### B.

Next, we address the voluntariness of Torrez's contingent pleas. To ensure that a guilty plea is voluntary, Minnesota Rule of Criminal Procedure 15 requires judges to conduct specific inquiries before accepting any guilty plea. *See* Minn. R. Crim. P. 15.01 &

9

cmt. (observing that "a complete inquiry as provided for by the rule will in most cases assure and provide a record for a valid plea"). One of the required inquiries is whether "the defendant [or] any other person has been given any promises other than those in the plea agreement, or been threatened by anyone, to get the defendant to plead guilty." Minn. R. Crim. P. 15.01, subd. 1(4)(c). This inquiry is designed to uncover threats or promises that might induce a defendant to plead guilty, thus jeopardizing the voluntariness of a plea. *See Raleigh*, 778 N.W.2d at 96 ("The voluntariness requirement ensures a defendant is not pleading guilty due to improper pressure or coercion.").

We are particularly concerned about potential coercion when a defendant enters into a contingent plea agreement—a special type of plea agreement in which a defendant pleads guilty in exchange for leniency for a third party.[4] *State v. Danh*, 516 N.W.2d 539, 542 (Minn. 1994). There is an added risk of coercion when the third party is related to the defendant. *Id.* (highlighting the "risk that a defendant, who would otherwise exercise his or her right to a jury trial, will plead guilty out of a sense of family loyalty"). Because a contingent plea is inherently fraught with the danger of coercion, we require more than the standard Rule 15.01 inquiry to "discover coercion" in contingent plea cases. *Id.* at

---

[4]     We use the phrase "contingent plea" to broadly describe a plea in which a defendant pleads guilty in exchange for leniency for a third party, who may or may not be a co-defendant. *See Danh*, 516 N.W.2d at 542. A "package-deal" plea is a type of contingent plea, which typically occurs when joined co-defendants all must accept the State's offer for any one of them to avoid trial. *See id.* at 540, 542; *In re Ibarra*, 666 P.2d 980, 985 (Cal. 1983) (observing the inherent risks of "package-deal plea bargains, "in which the prosecutor offers a defendant the opportunity to plead guilty to a lesser charge, and receive a lesser sentence, contingent upon a guilty plea by all codefendants").

542–43; *see also Butala v. State*, 664 N.W.2d 333, 339 (Minn. 2003) (reaffirming the principle that "the standard Rule 15.01 inquiry [is] insufficient to ascertain the voluntariness of a contingent plea").[5] Accordingly, in *State v. Danh*, we held that to ensure the voluntariness of a contingent plea, two additional requirements must be met— the State must disclose all of the plea's contingent terms and the district court must conduct a heightened inquiry. 516 N.W.2d at 542.

While we clarified in both *Danh* and *Butala v. State* that a standard Rule 15.01 inquiry does not sufficiently address a contingent plea's voluntariness, we did not identify the additional inquiry a district court must conduct to determine voluntariness. In *Danh*, we discussed, but did not expressly adopt, the approach applied in several other jurisdictions. *See* 516 N.W.2d at 543 (discussing *In re Ibarra*, 666 P.2d 980, 986 (Cal. 1983), and *Commonwealth v. Dupree*, 275 A.2d 326, 328 (Pa. 1971)). We pointed out, for example, that the California Supreme Court requires district courts to conduct a "totality of the circumstances" analysis to determine whether a plea is unduly coercive. *Danh*, 516 N.W.2d at 543 (citing *Ibarra*, 666 P.2d at 986–87).[6] We observed that under this

---

[5]     Although we affirmed the principle that a standard Rule 15.01 inquiry is inadequate to detect potential coercion associated with contingent pleas in *Butala v. State*, we did not view Butala's guilty plea as a contingent plea and therefore did not consider the factors from *State v. Danh* when assessing the voluntariness of Butala's plea. *See Butala*, 664 N.W.2d at 340 n.4 (noting that "the plea agreement in this case was not part of a package deal; and the postconviction court found the coercion inherent in contingent plea agreements absent, a finding amply supported by the record"). Here, it is undisputed that Torrez's pleas were contingent pleas because he pled guilty in exchange for leniency for his wife. Thus, *Butala* is distinguishable.

[6]     *People v. Mosby*, 92 P.3d 841, 844 (Cal. 2004), abrogated *Ibarra* on different grounds.

11

"totality of the circumstances" approach, a district court could explore the following factors:

> whether the prosecutor had a "reasonable and good faith" case against the third party; the strength of the factual basis for the plea; the nature and degree of coerciveness, for example, whether a third party has threatened the defendant; whether the leniency to a third party was an "insignificant factor" in the defendant's choice to plead guilty; the age of the defendant; whether defendant or the prosecutor had initiated plea negotiations; and whether charges had already been pressed against a third party.

*Id.* (citing *Ibarra*, 666 P.2d at 986–87).

We also noted that the Pennsylvania Supreme Court has suggested that a contingent plea "would be involuntary if the defendant 'primarily entered his guilty plea' because of a threat that if he did not do so, his wife would be prosecuted." *Id.* (emphasis in original) (quoting *Dupree*, 275 A.2d at 328). But in *Danh* we did not explicitly adopt either California's or Pennsylvania's approach. Instead, *Danh* held out these "cases from other jurisdictions" as "offer[ing] some guidance." *Id.*

We reaffirm the principles set out in *Danh* and, consistent with that case, we hold today that a district court must inquire into the details of a contingent plea agreement and conduct a heightened inquiry—beyond the standard Rule 15.01 inquiry—targeting any possible coercion to ensure that, notwithstanding any contingency, a guilty plea is truly voluntary. In so holding, however, we continue to leave to the district court's sound discretion the precise questions beyond the standard Rule 15.01 colloquy that must be asked in each particular case to ensure the voluntariness of a contingent plea.

12

C.

Torrez asserts that the district court did not conduct a sufficient inquiry into the voluntariness of his guilty pleas. In Torrez's view, once the district court learned about the State's promise of leniency to his wife, the court should have asked Torrez questions to understand the extent to which that contingency influenced his decision to plead guilty. We agree.

Although the district court made a record as to the terms of Torrez's contingent plea agreement with the State, it did not conduct a heightened inquiry targeting the risk of coercion inherent to such pleas. In fact, the district court did not ask the standard Rule 15.01 questions addressing voluntariness—whether the defendant or "any other person ha[d] been given any promises other than those in the plea agreement, or been threatened by anyone, to get the defendant to plead guilty."[7] And it took no "extra steps" to determine the voluntariness of the plea despite its contingent nature. *Id.*

The State argues that the district court's inquiry into voluntariness was sufficient because the record establishes that there was a strong factual basis for Torrez's pleas and because the State had a good faith case against Torrez's wife. These factors do not, however, compensate for the district court's failure to inquire into the potential coerciveness of the plea agreement. Torrez testified at his plea hearing that leniency for

---

[7]     In addition, because Torrez did not submit a Rule 15 plea petition, he also did not answer this question in writing. A Rule 15 petition can be an effective tool to ensure a guilty plea's validity, and we encourage district courts to require such a petition before accepting a guilty plea, especially in felony cases. *See State v. Propotnik*, 216 N.W.2d 637, 638 (Minn. 1974) (relying, in part, on defendant's written plea petition to conclude that defendant entered his plea voluntarily and intelligently).

13

his wife was the primary reason he chose to enter into the plea agreement. Because this contingency was a significant factor in his decision to plead guilty, there is an even greater risk of coercion than when leniency for a third party is just one of many factors influencing the defendant's decision. In such cases, the district court must inquire further into the defendant's reasons for pleading guilty. For example, the district court could have asked who proposed the contingent deal, how extensively the defense was involved in developing it, whether the State brought charges against Torrez's wife in order to extract Torrez's pleas, or how strong the State's charges were against her. *See United States v. Hodge*, 412 F.3d 479, 491–92 (3d Cir. 2005) (providing examples of questions that "may be helpful to ask" in probing a contingent plea for voluntariness).

### D.

Having concluded that the district court erred by accepting Torrez's contingent pleas without conducting a heightened inquiry targeting the risk of coercion inherent in such pleas, we consider the proper remedy. In *Danh*, although the district court conducted a thorough Rule 15.01 inquiry, the parties had not disclosed the contingent nature of the plea to the court when the plea was entered. 516 N.W.2d at 544. Rather than order the defendant's plea withdrawn, we remanded the case to give the parties an opportunity to present evidence on the issue of whether the plea was rendered involuntary by the promise of leniency. *Id.* at 544–45. But we also made a prospective ruling:

> In future cases, a defendant must be allowed to withdraw his or her guilty plea if the state fails to fully inform the trial court of the nature of the plea,

14

*or if the trial court fails to adequately inquire into the voluntariness of the plea at the time of the guilty plea*.

*Id.* at 542–43 (emphasis added).

In this case, the State disclosed the terms of the contingent plea agreement, but at the time Torrez entered his pleas, the district court failed to conduct a heightened inquiry targeting the risk of coercion inherent in contingent pleas. Therefore, plea withdrawal is the proper remedy. *See id.*; *see also McCarthy v. United States*, 394 U.S. 459, 470 (1969) ("There is no adequate substitute for demonstrating in the record *at the time the plea is entered* the defendant's understanding of the nature of the charge against him." (emphasis added)).

\*     \*     \*

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand the case to the district court for further proceedings consistent with this opinion.

Reversed and remanded.